[No. B085388. Second Dist., Div. Four. May 28, 1996.*]

THE PEOPLE, Plaintiff and Respondent, v.
OMAR WALDO BARILLAS et al., Defendants and Appellants.

**[Opinion certified for partial publication.†]**

---

*Review granted September 4, 1996. Review dismissed and opinion ordered published October 24, 1996.

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III, IV, and V.

**COUNSEL**

Richard G. Rumery and Cheryl Barnes Johnson, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne and David Andrew Eldridge, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VOGEL (C. S.), P. J.—**

I

INTRODUCTION

Following a jury trial, defendants Omar Waldo Barillas and Edward Hurtado were each convicted of two counts of second degree burglary and sentenced to state prison. Because neither attacks the sufficiency of the evidence to sustain the convictions, we need not and do not recite the facts of the crimes. Instead, we limit our opinion to an analysis of their respective contentions and the facts pertinent thereto. In the published portion of the

opinion, we evaluate Barillas's contention that he was denied his state constitutional right to counsel because his trial attorney was suspended from practice during the last three days of a six-day trial. In the nonpublished portion of the opinion, we consider Hurtado's contention that the trial court erred when it failed to obtain his *personal* waiver of presence at a readback to the jury of a portion of the trial testimony and we address the Attorney General's claims of sentencing error. Because we find no merit to either defendant's contention of error, we affirm the convictions, making minor modifications to the judgments to reflect the imposition of $200 restitution fines and the proper amount of conduct credit.

II

BARILLAS WAS NOT DENIED HIS STATE CONSTITUTIONAL
RIGHT TO COUNSEL

*Factual Background to the Disciplinary Action*

Barillas was represented by W. Merrill Davidson (Davidson). Davidson had been admitted to practice law in California in 1967.

In November 1991, several years before Barillas's trial commenced, the State Bar of California (State Bar) initiated disciplinary proceedings against Davidson with issuance of an order to show cause.[1]

On November 10, 1993, Davidson and the State Bar entered into a disposition of the matter. The State Bar dismissed several counts in return for Davidson's stipulation that he had commingled client trust funds with his own money.[2] The parties stipulated that Davidson was to be suspended for one year; that execution of the suspension be stayed; that Davidson be

---

[1] Barillas requested we take judicial notice of five documents generated by the State Bar in regard to the disciplinary action. We granted that request. Our statement of facts on this issue is based upon that matter.

[2] The stipulation recites: "1. In February 1988, Respondent [Davidson] was employed by Elaine Hodges ('Hodges') to handle a legal matter related to the care and support of her then-living grandmother, Ruby Gilmore ('Gilmore'). [¶]2. Respondent was required to hold in trust approximately $32,000.00 on behalf of Hodges for the purpose of paying Gilmore's expenses. Respondent deposited the $32,000.00 into his personal money market account number 001-804049 at Culver National Bank and business savings account number 001-404059 at Culver National Bank, rather than placing the money in a trust account. [¶]3. Respondent withdrew funds from the aforementioned accounts and combined the funds with his own cash in a safe at his residence. Thereafter, Respondent utilized cash from his safe to purchase cashier's checks, which he provided to Hodges for the purpose of paying Gilmore's expenses. [¶]4. Respondent commingled the funds of his client with his personal funds."

The stipulation further recites that Davidson's actions were a willful violation of the Rules of Professional Conduct, rule 4-100(A). That rule provides: "All funds received or held for

placed upon probation for two years; and that during the first sixty days of that probationary term, Davidson would "be actually suspended from the practice of law in the State of California." The stipulation provided that the probationary period and the period of actual suspension for 60 days would commence on "the date on which the order of the Supreme Court in this matter becomes effective."

On April 27, 1994, the Supreme Court filed an order implementing the stipulated disposition, including Davidson's actual suspension from the practice of law for 60 days. Rule 953(a) of the California Rules of Court provides that a disciplinary order becomes effective 30 days after it has been filed. Thus, Davidson's suspension took effect on Friday, May 27, 1994.

*Defendant's Trial*

Trial commenced on Monday, May 23, 1994, with voir dire. No proceedings were conducted on May 24. The People presented their case on May 25, 26, and 27. Barillas testified on his own behalf on Friday, May 27. The case recessed for the three-day Memorial Day weekend. On Tuesday, May 31, the parties presented closing argument, the court instructed the jury, and deliberations commenced. On Wednesday, June 1, the jury found Barillas guilty as charged.

On August 8, Barillas moved for a new trial based on Davidson's suspension.[3] The court asked Davidson when he had learned that the order of suspension had been filed. He responded: "It actually—It was after the jury reached a verdict and we had set the matter down for P&S, and because—It was the day after the verdict that I became aware of the suspension. . . . [¶] The effective date would be the 3rd of June, because that is the date I received notice. That is the date I got actual notice. The suspension was supposed to have taken effective [*sic*] May 27, and that was after the—We were still in trial at that time."

The court ruled: "The defendant having been in trial, the trial having already been engaged, and the fact that the attorney did not receive notice

---

the benefit of clients by a member or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labelled 'Trust Account,' 'Client's Funds Account' or words of similar import, maintained in the State of California, or, with written consent of the client, in any other jurisdiction where there is a substantial relationship between the client or the client's business and the other jurisdiction. No funds belonging to the member or the law firm shall be deposited therein or otherwise commingled therewith except as follows . . . ."

[3]If Barillas filed a written motion in this regard, he has chosen not to include it in the record on appeal.

until after the conclusion of the entire trial . . . , I do not see merit to defendant's claim. . . . [¶] I just do not see any failure in representation. I should indicate as well that during the course of the trial I saw no defect in the representation by the defense. Consequently, your request for a new trial, based on that ground, is denied."

*Discussion*

In two recent cases, our Supreme Court addressed the issue of the relationship between trial counsel's license to practice law and the defendant's state constitutional right to counsel.[4] The first is *In re Johnson* (1992) 1 Cal.4th 689 [4 Cal.Rptr.2d 170, 822 P.2d 1317]. In that case, Johnson had been represented by Raymond Hane (Hane) who, pursuant to Business and Professions Code section 6102, had been automatically suspended from the practice of law following his conviction of child molestation. While formal disciplinary proceedings were pending, Hane submitted his resignation to the State Bar. Thereafter, Hane represented Johnson at trial. The State Bar accepted Hane's resignation after Johnson had been sentenced.

In a subsequent habeas corpus proceeding, Johnson sought to set aside his conviction on the basis he had been denied his constitutional right to counsel. The court first considered and rejected the claim that Hane's automatic suspension was sufficient to demonstrate Johnson had been denied the right to counsel. "We are not persuaded that a suspension under section 6102 [of the Business and Professions Code] alone creates a presumption of incompetence or deprives the defendant of his right to the 'fully licensed attorney' contemplated by article I, section 15. Commission of any felony or other offense that may have involved moral turpitude triggers the suspension *whether or not the crime was related to the attorney's practice or affected the quality of the attorney's representation of clients*. . . . An attorney who is professionally competent does not become any less competent upon the filing of an order made pursuant to section 6102 suspending the attorney from practice. The date on which such an order is filed has no bearing on the attorney's knowledge or ability." (1 Cal.4th at pp. 696-697, italics added.)

---

[4]Prior to these decisions, the Courts of Appeal had rendered two decisions on the issue, neither of which is factually apposite to this case. In *People* v. *Medler* (1986) 177 Cal.App.3d 927 [223 Cal.Rptr. 401], a divided Court of Appeal held that a defendant had not established he had been denied effective assistance of counsel merely because his trial attorney had been suspended from practice at the time of trial because of nonpayment of State Bar dues. In *People* v. *Hinkley* (1987) 193 Cal.App.3d 383 [238 Cal.Rptr. 272], the appellate court concluded that the defendant had been denied his constitutional right to counsel because at the time of trial, the attorney's practice had been taken over by the superior court based upon a finding that he was incompetent as a matter of law to represent his clients. (See Bus. & Prof. Code, § 6190 et seq.)

The court then went on to explain that an automatic suspension based upon the attorney's conviction of a crime of moral turpitude—such as the offense committed by Hane—did not necessarily establish that the attorney was "unfit to practice, let alone incompetent" (*id.* at p. 697) and that was a matter to be resolved in the subsequent disciplinary proceeding. The court concluded that Hane's suspension "in and of itself did not establish, as a matter of law, that he was unfit to practice law. Moreover, a conclusion that an attorney who has committed an offense of moral turpitude is unfit to practice law is not necessarily a judgment on the attorney's professional competence. We do not presume that a suspended attorney lacks professional competence. 'Merely because an attorney has been disciplined for some infraction of the rules by which he must abide is no reason for assuming that he is not a qualified and efficient lawyer. Erring morally or by breach of professional ethics does not necessarily indicate a lack of knowledge of the law.' [Citations.]" (*Id.* at p. 699.)

The Supreme Court then turned to the issue of the legal significance of Hane's resignation from the State Bar *prior to* representing Johnson at trial. It held that "representation by a member of the State Bar is now essential if the constitutional guaranty [of the right to counsel] is to be satisfied." (*In re Johnson, supra,* 1 Cal.4th at pp. 700-701.) It concluded that representation by an individual who, although formerly licensed, has resigned from the State Bar, results in a denial of the right to counsel as a matter of law. (*Id.* at p. 701.) "The court will not examine the quality of the representation in such cases since an essential element of the constitutional right to counsel is counsel's status as a member of the State Bar." (*Ibid.*) On that basis, it found Johnson had met his burden of establishing he had been denied the right to counsel.

The other relevant Supreme Court case is *People* v. *Sanchez* (1995) 12 Cal.4th 1 [47 Cal.Rptr.2d 843, 906 P.2d 1129]. There, a disciplinary proceeding was pending against defense counsel Toton at the time he commenced representation of Sanchez in a death penalty matter. The allegations primarily involved Toton's handling of money received on behalf of his clients. (*Id.* at p. 37.) Toton was ultimately disbarred a month after the trial was completed. (*Id.* at p. 39.) On appeal, one issue was whether Sanchez had been denied his state constitutional right to counsel. The court found that he had not. Relying upon its reasoning in *In re Johnson, supra,* the court concluded "that the fact disciplinary proceedings were pending against counsel Toton did not *automatically* render Toton's performance inadequate or prejudice defendant's right to effective counsel. [Citation.] . . . In fact, unlike the attorney in *Johnson,* Toton was a member of the State Bar at all times during his representation of defendant. ' "Erring morally or by a

breach of professional ethics does not necessarily indicate a lack of knowledge of the law." ' [Citation.] We simply are not persuaded that Toton's unrelated disciplinary problems in any way influenced his representation of defendant or otherwise rendered him unfit as a matter of law. [Citation.]" (*People* v. *Sanchez, supra,* 12 Cal.4th at p. 44, original italics.)

■ As we shall explain, we believe the tenor of our Supreme Court's analyses in *Johnson* and *Sanchez* compels rejection of Barillas's claim.[5] On its face, *Johnson* is distinguishable from this case because there counsel's suspension was automatically triggered by his felony conviction and was an interim measure pending a formal disciplinary proceeding whereas here Davidson's suspension was the ultimate disciplinary measure imposed following a stipulated resolution of the charges first lodged against him. That fact is important because one reason *Johnson* rejected the defendant's claim that automatic suspension equates with a presumption of incompetence or denial of the right to counsel was that the significance of the conviction was a matter to be adjudicated in the subsequent disciplinary action. (See 1 Cal.4th at pp. 696-699.) That element is not present here because by the time of Barillas's trial, the nature and scope of Davidson's discipline had been fully resolved. Nonetheless, we cannot conclude that Davidson's suspension automatically resulted in a denial of Barillas's right to counsel.

One of the themes in *Johnson* is that not every professional delict automatically demonstrates incompetence but that its factual underpinnings must be carefully examined in order to decide if representation by the disciplined attorney has violated a criminal defendant's right to counsel. (1 Cal.4th at pp. 699-700.) "Discipline is imposed on the basis of an attorney's criminal conduct or violation of the Rules of Professional Conduct in order to protect the public from dishonest or corrupt attorneys *as well as from those who fail to provide competent professional services.* Suspension or disbarment may be deemed necessary to protect clients from dangers other than inadequate representation, and to maintain public confidence in the bar. Although, in some cases, misconduct occurs in the course of representation of a client, and adversely affects the quality of representation, this is not invariably so." (*In re Johnson, supra,* 1 Cal.4th at p. 697, italics added.)

Here, the basis of Davidson's suspension was his commingling of client funds with his own money. This does not demonstrate incompetence to provide an adequate defense in a criminal proceeding. In general, breach of a professional ethical obligation does not necessarily indicate a lack of

---

[5]The Supreme Court is presently considering the issue of whether the right to counsel is violated when defense counsel has been placed on inactive status for failing to comply with minimum continuing legal education requirements. (*People* v. *Ngo* ▇ (Cal.App.).)

knowledge of the law. (*In re Johnson, supra,* 1 Cal.4th at p. 699.) In specific, review of Davidson's State Bar disciplinary file demonstrates that, in this case, counsel's deviation was not the functional equivalent of a professional incompetence. Nothing in the file indicates that Davidson lacked the skills a criminal defendant could reasonably expect counsel to possess. On the contrary, the file refers to "many letters of recommendation from lawyers and judges" about Davidson. The misconduct which formed the basis of the suspension is characterized as "aberrational." Davidson recognized his actions were improper and was appropriately remorseful. In sum, Davidson's suspension was unrelated to the issue of his competency as a criminal defense attorney. (See *People* v. *Sanchez, supra,* 12 Cal.4th at p. 44.) Stated another way, while Davidson's violation of a professional duty rendered him unfit to practice law, the particular violation and subsequent suspension did not affect his professional competence insofar as representation of Barillas is concerned. We therefore conclude that Davidson's suspension during the last three days of a six-day trial did not result in a denial of Barillas's state constitutional right to counsel.[6]

In light of this analysis, we reject Barillas's request that we remand the matter for a "full evidentiary hearing surrounding the circumstances of counsel's suspension and when he actually received notice [of the suspension]." The circumstances surrounding the suspension are fully explained in the State Bar file, the contents of which we have taken judicial notice. (See fn. 1, *ante.*) Barillas fails to suggest what additional information would be gained at an evidentiary hearing.

Nor would there be any value to a hearing on the issue of when Davidson actually received notice of the suspension order. The implicit thrust of this request is the argument that the trial court erred when it credited Davidson's explanation that he did not have *actual* knowledge of the suspension until June 3, after the jury returned its verdicts. This approach misses the mark. Rule 953(a) of the California Rules of Court provides that a disciplinary order is effective 30 days after its filing by the Supreme Court. That rule controls this situation and means that Davidson's suspension became effective during trial on May 27. The date Davidson actually received, opened,

---

[6]The second portion of *Johnson*'s holding—that denial of the right to counsel is established if the accused was represented by an individual no longer a member of the State Bar—clearly does not apply to this case. Notwithstanding Davidson's 60-day suspension, he was still an attorney at law (*Friday* v. *State Bar* (1943) 23 Cal.2d 501, 506 [144 P.2d 564]; *People* v. *Medler, supra,* 177 Cal.App.3d at p. 930; and *Lyons* v. *U.S.* (9th Cir. 1963) 325 F.2d 370, 374) although deprived of the status of being an *active* member of the State Bar (*In re Johnson, supra,* 1 Cal.4th at p. 696, fn. 2). Only a disbarred attorney is stricken from the roll of attorneys. (Bus. & Prof. Code, § 6117.) The significance of a suspension is to bar the individual from practicing until the expiration of the suspension period. (*In re Naney* (1990) 51 Cal.3d 186, 195 [270 Cal.Rptr. 848, 793 P.2d 54].)

and read the order is legally irrelevant to the issues raised and decided in this appeal. The fact, be it a fact, that a disciplined attorney such as Davidson knew about the disciplinary order but nonetheless continued to represent a criminal defendant could very well affect the State Bar's attitude toward the attorney (e.g., did counsel willfully disobey a disciplinary order?)[7] but it would have no impact on the nature of the representation afforded. We therefore return to our earlier conclusion. Davidson *was* suspended from the practice of law during the last three days of the trial but that fact, in and of itself, is insufficient to establish Barillas was denied his right to effective counsel. If Barillas wishes to pursue a claim of inadequate representation, he must meet the criteria established by case law (see, e.g., *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1] and *Strickland* v. *Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674, 104 S.Ct. 2052]), a path he has not pursued on this appeal.

## III-V*

. . . . . . . . . . . . . . . . . . . . . . . . .

## VI

### DISPOSITION

The judgment as to defendant Hurtado is modified: (1) to provide that he has custody credit for 344 total days, including 114 days conduct credit; and (2) to reflect the imposition of a $200 restitution fine pursuant to Government Code section 13967.

The judgment as to defendant Barillas is modified to reflect the imposition of a $200 restitution fine pursuant to Government Code section 13967.

As so modified, both judgments are affirmed.

Epstein, J., and Hastings, J., concurred.

---

[7]Practicing law while under suspension is both a misdemeanor (Bus. & Prof. Code, § 6126) and a contempt (Bus. & Prof. Code, § 6127).

*See footnote, *ante,* page 1233.