[No. S008299. Aug. 9, 1990.]

MORLEY H. SHAPIRO, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

## COUNSEL

Riordan & Rosenthal, Dennis P. Riordan and B. E. Bergesen III for Petitioner.

Diane C. Yu and Truitt A. Richey, Jr., for Respondent.

## OPINION

**THE COURT.**—In this proceeding we consider the recommendation of the Review Department of the State Bar Court (review department) that petitioner Morley H. Shapiro be suspended from the practice of law for two years.[1] Petitioner asks this court to reject the review department's conclusion he wilfully violated rule 955 of the California Rules of Court (rule 955) and to modify the recommended discipline as excessive.

---

[1] The review department recommended that the stay of suspension ordered in petitioner's previous disciplinary proceeding be set aside, that probation be revoked, and that petitioner be suspended until the latest of the following occurs: until October 31, 1989, three years from the effective date of our prior order; until restitution is made to injured clients; or until he passes the Professional Responsibility Examination anytime after January 1, 1988. Based in part on a subsequent disciplinary proceeding, the review department further recommended that petitioner be suspended for an additional two years. Their decision was filed September 8, 1988. Insofar as the period of our prior order has expired, we address here the review department's recommendation of the two-year suspension.

As explained below, we conclude that the evidence supports the review department's finding petitioner wilfully violated rule 955. We further conclude, however, that the review department's recommended discipline is excessive, and order petitioner suspended for two years, execution thereof stayed with two years' probation on the condition of one year's actual suspension.

## I. FACTS AND PROCEDURE

This proceeding arises from two separate State Bar disciplinary hearings, which were consolidated by the review department. We review each proceeding separately.

### A. *The Rule 955 Proceeding*

The rule 955 proceeding stems from discipline previously imposed by this court for misconduct in three separate matters. In one, the Verbish matter, petitioner collected a fee of $2,000 to represent Verbish in a dissolution proceeding. Petitioner prepared a property settlement agreement but thereafter failed to appear on behalf of his client. Petitioner subsequently withdrew from the employment without refunding $1,500 of the fee Verbish paid him.

In the Bergman matter, petitioner accepted $500 to undertake to have Bergman's criminal probation modified. He did not place the money in a trust account and failed to use reasonable diligence in representing the client. When Bergman fired him nine months later, petitioner failed to return any of the unearned fees. In the third matter, petitioner was found to have practiced law during a five-week period while suspended for failure to pay bar dues.

On December 19, 1985, the State Bar referee recommended a three-year suspension, stayed, with three years' probation on conditions that included one year's actual suspension; restitution to Verbish and Bergman; compliance with rule 955; and successful completion of the Professional Responsibility Examination. On May 23, 1986, the review department adopted this recommendation.

On October 1, 1986, we adopted the recommendation of the review department and issued an order providing for three years' suspension, stayed, with three years' probation under the following conditions: one year's actual suspension; successful completion of the Professional Responsibility Examination; restitution to Verbish and Bergman; and compliance

with rule 955(a) and (c) within 30 and 40 days, respectively, after the effective date of the order.[2] The order became effective October 31, 1986.

In November 1986, petitioner met with his probation monitor. He informed the probation monitor that at the time of his suspension he was not practicing law and had referred his remaining clients to Berman & Glenn, a local law firm. In July 1986, Howard Berman and Jeffrey Glenn met with petitioner's clients and informed them petitioner would no longer represent them. Berman and Glenn offered to substitute as counsel if the clients so desired and, if not, assist them in finding other representation. Petitioner was present at the meetings.

In light of these circumstances, petitioner was unclear whether the rule 955(a) requirement that he "notify all clients being represented in pending matters" of his suspension still applied. Unfortunately, the probation monitor failed to clarify the situation. This was his first assignment as a probation monitor referee, and he was uncertain as to the requirements of rule 955. Rather than seek advice elsewhere, however, the probation monitor erroneously advised petitioner his affidavit had to be filed on or before January 10, 1987, a month after the actual filing date. Later, by letter dated December 18, 1986, the probation monitor advised petitioner the affidavit was actually due on December 10, 1986, and to file it immediately.

On January 9, 1987, one day before the compliance date originally specified, petitioner filed an affidavit with the court modeled on a format supplied by the probation monitor. The clerk of the court rejected the document as inadequate because the information provided was for a "Quarterly Report of Probationer pursuant to Order," not an affidavit of compliance with rule 955.

Subsequently, in a letter dated February 9, 1987, the probation monitor advised petitioner that verbal notification to clients was insufficient and written notice was required. Petitioner then sent letters to former clients informing them of his suspension but failed to file a new affidavit. He testified this omission was due to a serious back injury for which he was taking medication. Petitioner did, however, retain counsel to handle matters with the State Bar, including compliance with rule 955. On May 5, 1987, through his attorney, he submitted a proper affidavit.

On March 11, 1987, we referred petitioner's failure to comply with rule 955 to the State Bar for a hearing, report, and recommendation. A hearing

---

[2] Rule 955(a) requires a suspended or disbarred attorney to inform clients of his or her status, return appropriate case records, return unearned fees, and notify opposing counsel. Rule 955(c) requires filing an affidavit with the Clerk of the Supreme Court showing compliance with rule 955(a).

was held September 10, 1987, and petitioner was found culpable of wilful noncompliance. The hearing department found petitioner did not provide clients with written notice of his suspension until April 30, 1987, and failed to serve notice of his suspension on the courts and opposing counsel in two cases until May 1, 1987. The referee further found the evidence of petitioner's medical and psychiatric problems insufficient to excuse his deficiencies.

On March 3, 1988, a second hearing was held to determine the recommended discipline. The referee recommended the stay of petitioner's earlier imposed suspension be revoked and petitioner be required to serve out the original order of suspension, until October 31, 1989. The referee further recommended an additional one-year suspension.

B. *The Cordova Matter*

In May 1984, petitioner was retained and paid $400 by Ute A. Cordova to defend her in a bankruptcy proceeding. Petitioner told Cordova he would represent her and attempt to work out a settlement, but also advised her to retain a bankruptcy attorney. On May 4, 1984, Cordova was served with a summons notifying her an answer was due within 30 days. Petitioner negotiated with the plaintiff's attorney for an extension to July 20, 1984. When petitioner still failed to respond timely, opposing counsel informed him an application for a default judgment would be filed. A second extension request was refused on or about July 31, 1984. Nevertheless, during the first two or three weeks of August, petitioner served as a diving coach for the Swedish Olympic Diving Team in Los Angeles.

At no time did petitioner file an answer on behalf of Cordova. On August 27, 1984, default was entered. When he made no effort to have it set aside, Cordova discharged him and retained new counsel, who subsequently succeeded in setting aside the default judgment on condition she pay $1,500 in fees to the opposing party's attorney.

The State Bar referee found petitioner culpable of violating Business and Professions Code sections 6068, subdivision (a) and 6103 (oath of office) and Rules of Professional Conduct, rule 2-111(A)(2) (withdrawing from employment without taking reasonable steps to avoid harm to a client) and former rule 6-101(A)(2) (continuing to represent a client when not having the time or the resources to do so) (new Rules of Professional Conduct became operative on May 27, 1989). The referee further found the following facts in aggravation: petitioner's failure to pay State Bar dues; the prior suspension by this court of October 1, 1986; and the determination petitioner had wilfully violated rule 955. In mitigation, the referee found that during the period in question, petitioner suffered from esophageal and

duodenal peptic disease, painful rectal spasms, migraine headaches, anxiety, and depression. These illnesses were exacerbated by petitioner's divorce, the death of his father, and the total disability of his brother. The referee also found that following medical and psychiatric treatment, petitioner's physical and mental health had improved significantly.

The referee recommended petitioner be placed on probation for three years on conditions that included nine months' actual suspension consecutive to any suspension imposed in the rule 955 proceeding.

## C.  The Review Department's Recommendation

After consolidating the two matters, the review department adopted the referee's findings and recommended the stay of the suspension ordered by this court be set aside, probation be revoked, and petitioner be suspended from the practice of law until the latest of the following occurrences: (1) three years from the effective date of our previous order of October 31, 1986; (2) petitioner makes full restitution in the Bergman, Verbish, and Cordova matters; or (3) petitioner takes and passes the Professional Responsibility Examination anytime after January 1, 1988. The review department further recommended an additional consecutive two-year suspension.

## II.  DISCUSSION

■ Although we give great weight to both the review department's disciplinary recommendation (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244]) and the hearing panel's factual findings (*In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]), we must independently review the evidence and pass on its sufficiency. Similarly, "[t]hough substantial weight is given to the State Bar's recommendations, we exercise independent judgment in determining the discipline. [Citations.] We may adopt conclusions as to guilt and yet revise the recommendations regarding discipline. [Citations.]" (*Price* v. *State Bar* (1982) 30 Cal.3d 537, 548 [179 Cal.Rptr. 914, 638 P.2d 1311].) With these principles in mind, we turn to petitioner's contentions.

## A.  "Wilful" Violation of Rule 955

Petitioner contends the evidence does not support the review department's finding that he wilfully violated rule 955. ■ We first considered the operative meaning of "wilful" in *Durbin* v. *State Bar* (1979) 23 Cal.3d 461 [152 Cal.Rptr. 749, 590 P.2d 876], stating, "It is fair to assume that 'wilful' as used in rule 955, subdivision (e), is intended to have the same meaning as in other contexts wherein a court may exercise contempt

powers." (*Id.*, at p. 467.) In a contempt context, Penal Code section 7, subdivision 1, sets forth the following definition: "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." "Thus, bad faith is not a prerequisite to a finding of a willful failure to comply with rule 955, subdivision (c). Only a general purpose or willingness to commit the act or permit the omission is necessary." (23 Cal.3d at p. 467.)

■ In light of this definition, we find nothing in the record negating "a general purpose or willingness" in petitioner's failure to comply with rule 955. Moreover, his claims of physical and mental disability are belied by the facts. For example, subsequent to notification from the probation monitor in February 1986 that compliance was overdue, petitioner failed to file a proper rule 955 affidavit timely but did obtain a large loan on his own real property despite having back problems. During this time he also attended a Napa County planning commission meeting and a board of supervisors meeting, both of which related to his real property loan. Finally, he spent approximately 30 hours in March and April doing legal research and writing a criminal brief for another attorney in Napa. Thus, the record does not sustain any finding of inability to file the rule 955 affidavit.

Equally unpersuasive is the claim petitioner's noncompliance resulted from the probation monitor's misdirection. In *Powers* v. *State Bar* (1988) 44 Cal.3d 337, 341 [243 Cal.Rptr. 386, 748 P.2d 324], we concluded: "Thus even though there were no clients or counsel to notify pursuant to subdivision (a) of rule 955, Powers was still required to file an affidavit with us pursuant to subdivision (c). Any belief Powers may have had about the inapplicability of rule 955 was clearly unreasonable even if in good faith." We similarly reject petitioner's claim here. The first affidavit, which we found deficient, clearly did not conform to the terms of rule 955(c); and, notwithstanding the probation monitor's advice, petitioner could not have reasonably concluded it would suffice. Accordingly, we find the noncompliance with rule 955 was "wilful" within the meaning of the State Bar rules.

### B. *Recommended Discipline*

■ Consistent with its consolidation of the rule 955 violation and the Cordova matter, the review department took into consideration all aggravating and mitigating circumstances and recommended a single, undifferentiated discipline by which petitioner would be actually suspended for at least the remainder of his original three-year suspension with a two-year extension at the conclusion of that period, thus effectively placing him

on suspension for at least four years. Exercising our independent authority in these matters, we find the recommended discipline excessive in light of the record and other relevant factors.

At the outset, we reject the finding that petitioner failed to notify opposing counsel in two cases until May 1, 1987. In neither case was the respective party a client of petitioner as of October 31, 1986. Petitioner testified that each had already been informed that he was not going to represent them as of that date. Both clients had also met with Berman and Glenn and agreed to their representation. The notices to opposing counsel, on which the finding was based, were sent by petitioner's attorney in May to ensure compliance with rule 955 even though notice had apparently been given in February. Howard Berman corroborated this testimony.

We further find substantial evidence in mitigation. In the rule 955 matter, petitioner initially received inadequate guidance from his probation monitor, who acknowledged partial responsibility for the misunderstanding that delayed the filing of petitioner's affidavit. Neither the probation monitor nor petitioner was aware that written notification of suspension was required even though he had no pending legal matters. Moreover, while the first affidavit did not conform to all the statutory requirements, petitioner did file it within the time originally designated by the probation monitor utilizing the format he indicated. The record thus demonstrates a diligent, if ultimately unsuccessful, attempt to comply with the rule. Furthermore, when petitioner learned his affidavit was deemed insufficient by the court, he contacted his probation monitor and retained a law firm to assist him with compliance. The matter was resolved satisfactorily within several weeks, although by then our referral order had already triggered State Bar disciplinary proceedings.

In addition, since all three incidents of client misconduct occurred within a fairly narrow time frame, petitioner's lack of prior discipline may be considered as a mitigating factor. Prior to the events in question, petitioner practiced for 16 years (1966-1982) without disciplinary action. ■ As we observed in *Schneider* v. *State Bar* (1987) 43 Cal.3d 784, 798-799 [239 Cal.Rptr. 111, 739 P.2d 1279], "The absence of a prior disciplinary record is an important mitigating circumstance [citation], particularly in a case such as this where petitioner was a member of the bar for approximately 13 years before the events leading to these proceedings. [Citation.]"

■ Neither are we insensitive to the personal problems besetting petitioner during this period. (*Schneider* v. *State Bar, supra,* 43 Cal.3d at p. 799; *Smith* v. *State Bar* (1985) 38 Cal.3d 525, 540 [213 Cal.Rptr. 236, 698 P.2d 139].) Petitioner has shown that at the time he was undergoing physical and

psychological difficulties. More significantly, he has demonstrated through the reports of his attending internist and psychiatrist that he has substantially recovered from his infirmities. Finally, petitioner submitted oral testimony from experienced practicing attorneys in the community who, aware of the facts of the misconduct, testified to petitioner's good character and his considerable ability as a lawyer.

■ In determining the appropriate discipline in this case, we must bear in mind not only the foregoing mitigation but also the overriding principle that the purpose of these proceedings is not to punish an attorney but to inquire into the moral fitness of an officer of the court to continue in that capacity and to afford protection to the public, the courts, and the legal profession. (*Clancy* v. *State Bar* (1969) 71 Cal.2d 140, 151 [77 Cal.Rptr. 657, 454 P.2d 329].) To assist in this evaluation, we may look to both the established standard sanctions for attorney misconduct and the discipline imposed in other cases of comparable misdeeds.

With respect to noncompliance with rule 955, we have previously imposed a six-month suspension for a similar violation in *Durbin* v. *State Bar, supra,* in which we also stated, "Petitioner's willful failure to comply with an express order in these proceedings cannot be ignored. However, because he did in fact comply with rule 955, subdivision (a), and failed only in reporting his compliance, the recommended discipline of one year additional suspension is too severe." (23 Cal.3d at p. 469.)

■ As to the Cordova matter, the standard sanction for offenses constituting a wilful failure to perform services not demonstrating a pattern of misconduct is reproval or suspension, depending on the extent of the misconduct and the degree of harm to the client. (Rules Proc. of State Bar, div. V., Stds. for Atty. Sanctions for Prof. Misconduct, std. 2.4(b).) If the record shows a pattern of wilful failure to perform services demonstrating the lawyer's abandonment of the causes for which he was retained, the standard sanction is disbarment. (*Id.,* std. 2.4(a).) The Cordova matter involved a single charge of failure to file an appropriate responsive pleading resulting in a default, suggesting that a lengthy suspension is not necessarily appropriate. As we indicated, the Verbish and Bergman incidents occurred within the same relative period and thus do not suggest a "pattern" of misconduct.

Given the totality of the foregoing considerations, we conclude the review department's recommendation of approximately four years' actual suspension is excessive.[3]

---

[3] Given the lapse of time since the review department made its recommendation in the rule 955 matter (see fn. 1, *ante,* p. 253), the clerk of the court contacted the State Bar to determine petitioner's current status with respect to successful completion of the Professional Responsi-

## III.  DISPOSITION

It is ordered that petitioner, Morley H. Shapiro, be suspended from the practice of law for two years; that execution of the suspension be stayed; and that he be placed on probation for two years on the condition he be actually suspended for a period of one year. It is further ordered that Shapiro comply with the requirements of rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the date of this order. It is further ordered that Shapiro make restitution to Ute A. Cordova in the amount previously stipulated. This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

On September 27, 1990, the opinion was modified to read as printed above.

---

bility Examination and restitution to petitioner's former clients. The State Bar has informed the court that restitution has been made to former clients Verbish and Bergman; restitution to former client Cordova is still outstanding in the amount of $1,551.25. Due to his failure to pass the Professional Responsibility Examination in a timely manner, petitioner was on interim suspension from February 18, 1988, through May 25, 1989, at which time the State Bar informed the court of his successful completion.