[No. S007166. Oct. 18, 1990.]

WILLIAM RAY HAWES, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Cohen & Karpman and Theodore A. Cohen for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Major Williams, Jr., and Mara Mamet for Respondent.

**OPINION**

**THE COURT.**—The Review Department of the State Bar Court (review department) has recommended that petitioner William Ray Hawes be suspended from the practice of law in California for five years, that execution of the suspension order be stayed, and that he be placed on probation for five years upon conditions that include actual suspension from the practice of law for three years. Petitioner's main contention is that the recommended discipline is excessive because his misconduct resulted in significant measure from a mental disturbance, bipolar affective disorder, that is now controlled by medication, and also from related alcoholism and drug abuse that he has now overcome. We agree.

### FACTS

Petitioner has no prior record of discipline. He was admitted to the practice of law in California in 1970. From June 1971 until February 1978, he served as Assistant United States Attorney for the Central District of California. From June 1978 until January 1981, he was the District

Attorney of Shasta County. He then became a sole practitioner and began the pattern of misconduct that resulted in this disciplinary proceeding.

## A. Evidence Relating to Misconduct

### 1. The Berkay Matter

Marilyn Berkay retained petitioner in October 1981 to represent her in a personal injury action. Petitioner filed a complaint on Berkay's behalf in December 1981, but did not serve the complaint or take any further action in the case. From 1981 to 1985, Berkay was unable to reach petitioner or to determine the status of her action. She then retained another attorney, who wrote three letters to petitioner requesting information. The attorney reported the matter to the State Bar when petitioner failed to respond to any of these letters. The State Bar twice wrote to petitioner requesting information about the Berkay matter, but he did not reply.

### 2. The Ralls Matter

James Ralls retained petitioner in January 1982 to represent him in a contract dispute, and he paid petitioner $800 as an advance fee. Petitioner filed and served a series of complaints but conducted no discovery and never advanced the action beyond the pleading stage. In the latter part of 1982, Ralls had great difficulty in reaching petitioner and was unable to reach him at all after the beginning of 1984. Finally, in March 1985, a new attorney was substituted into the case.

### 3. The Parker Matter

Petitioner was retained by William Parker in July 1982 and filed a personal injury action on his behalf in November 1982. Although aware that Parker was difficult to reach, petitioner made little effort to find Parker when it was essential to do so and on numerous occasions failed to keep scheduled appointments with him. In June 1983, petitioner was served with a number of discovery requests. He failed to respond to most of the requests and submitted interrogatory answers that were incomplete and unverified. The trial court dismissed the action and imposed sanctions of $675. Petitioner did not pay the sanctions until they were reduced to judgment.

### 4. The Spence Matter

In August 1983, Gene Aubry Spence retained petitioner to represent him in a criminal action in which he was charged with vehicular manslaughter.

Spence paid petitioner $450 of a requested $700 retainer. Petitioner conducted no formal discovery and interviewed no witnesses. Except for visiting the scene of the collision, he did not independently investigate the facts of the case, relying instead on the police report and information furnished by the district attorney's office. At trial, the prosecution's case consisted of stipulated facts and the testimony of two accident reconstruction experts. Petitioner made no opening or closing statement, and called only Spence as a witness. At the close of trial, petitioner requested a continuance to prepare and submit a memorandum of points and authorities on whether the deceased driver's blood-alcohol level of .09 percent provided a ground for determining that Spence's conduct was not the proximate cause of death. Although aware of the other driver's blood-alcohol level, petitioner had not researched the issue before trial. The court continued the matter to April 3, 1984, at 8:30 a.m.

Petitioner did not file any memorandum of points and authorities, nor did he inform the court or opposing counsel that he would not do so. When petitioner failed to appear at 8:30 a.m. on April 3 (he appeared shortly after 9 a.m.), the court found him in contempt and imposed a fine. Spence, who was found guilty, later wrote petitioner complaining about his handling of the case and requesting a refund; petitioner never replied to the letter.

### 5. *The Agostini Matter*

Virginia Agostini paid petitioner $350 in October 1983 to represent her in a dispute with an automobile dealership. During the next several months, she tried on numerous occasions to contact petitioner to determine the status of her case. Petitioner filed a complaint and first amended complaint but conducted no discovery and made no attempt to negotiate a settlement. Trial was scheduled for September 1984, but petitioner took the matter off calendar without informing Agostini. After appearing for trial only to learn the matter was off calendar, Agostini was unable to reach petitioner until March 1985, when she requested the return of her file and a refund of the fee. Petitioner refused the request. Agostini instituted fee arbitration before the local bar association. Petitioner failed to appear, but he delivered the file to the arbitrator, who awarded Agostini her entire fee.

### 6. *The Beauchamp Matter*

Verna Beauchamp retained petitioner in December 1983 to investigate a possible claim for wrongful discharge. After petitioner had told her that he thought she had a good case and that the action should be filed in federal court, she paid him a retainer of $600. In May 1984, petitioner prepared a complaint to be filed in what was described in the caption as "Municipal

Court, Redding Federal District, County of Shasta, State of California." Petitioner had Beauchamp come to his office to verify the complaint, which he told her would be filed in a week or two. No complaint was ever filed.

In August 1984, Beauchamp came to petitioner's office and requested a copy of the complaint; petitioner promised to send it to her but never did. After many unsuccessful attempts to reach petitioner, Beauchamp directed him to return the retainer and to deliver her file to another attorney. Petitioner made an appointment with Beauchamp, but when she arrived the office was closed and her file was under the door. Petitioner did not return the money until March 1987, long after the State Bar proceedings had commenced.

## B. *State Bar Findings*

The hearing panel made these findings: (1) in each instance, petitioner failed to use reasonable diligence to accomplish the purpose for which he was employed (former rule 6-101; see now, rule 3-110);[1] (2) in the Berkay, Ralls, and Agostini matters, petitioner withdrew from employment without taking reasonable steps to avoid foreseeable prejudice to his clients' rights (former rule 2-111(A)(2); see now, rule 3-700(A)(2)); (3) in the Agostini and Beauchamp matters, petitioner failed to return unearned fees (former rule 2-111(A)(3); see now, rule 3-700(D)(2)); (4) in the Berkay matter, petitioner failed to cooperate in the State Bar investigation (Bus. & Prof. Code, § 6068, subd. (i));[2] (5) in the Parker matter, petitioner demonstrated a lack of support of state law (§ 6068, subd. (a)); (6) in the Spence matter, petitioner showed disrespect to the court (§ 6068, subd. (b)); and (7) petitioner demonstrated a pattern of misconduct.

The review department adopted each of these findings.

## C. *Mitigating Circumstances*

Petitioner presented evidence of the following circumstances in mitigation: At the time of the misconduct, petitioner was abusing alcohol and methamphetamines. Petitioner began to take methamphetamines under prescription to control his weight, and there is no evidence he ever obtained methamphetamines illegally, but he evidently became dependent on the

---

[1] All references to rules are to the State Bar Rules of Professional Conduct unless otherwise indicated. The present rules took effect on May 27, 1989, after the misconduct involved here. References to former rules are to those in effect when petitioner's conduct occurred.

[2] All further statutory references are to the Business and Professions Code unless otherwise indicated.

drug and took it for purposes other than that for which it was originally prescribed.

Petitioner was first diagnosed as having bipolar affective disorder, previously known as manic-depressive illness, in January 1984. Lithium carbonate was prescribed to control the disorder, but at a dosage that proved insufficient. Petitioner ceased taking the medication on his own accord shortly after it was prescribed, and he resumed his use of alcohol and methamphetamines.

In October 1984, petitioner was convicted of contempt of court in a matter unrelated to this proceeding. He was placed on probation on certain conditions, including that he abstain from the use of alcohol and controlled substances, that he participate in an Alcoholics Anonymous or a Narcotics Anonymous program, and that he take part in a drug monitoring program with regular blood or urine analysis. Between October 1984 and September 1986, petitioner violated his probation at least three times by taking methamphetamines. As a result, the period of probation was extended from two to four years.

In September 1986, petitioner was referred to The Other Bar, an alcohol counseling program for attorneys, as a result of which he entered an inpatient recovery program. While in this program, petitioner's bipolar affective disorder diagnosis was confirmed and he was again placed on a regimen of lithium carbonate, this time at an adequate dosage. Since his discharge from the program in October 1986, petitioner has been regularly taking his medication and has totally abstained from alcohol and methamphetamine use. In the opinion of his treating physician, petitioner has become a completely changed, normal and stable person.

The hearing panel, however, concluded "there is no assurance that [petitioner's] present stable condition will continue." The panel noted that the period of petitioner's abstinence from alcohol and methamphetamines, as well as control of his mental disorder through medication, was at that time less than *two* years; that during this time he was subject to regular blood or urine testing as a condition of his probation in the contempt matter; and that he previously had suffered relapses during which he discontinued medication or resumed alcohol and drug abuse. The review department adopted the hearing panel's conclusion after correcting it to recite that the period of demonstrated rehabilitation was then less than *one* year.

In addition, the hearing panel made these findings, which were also adopted by the review department, regarding mitigating circumstances: petitioner has no prior record of discipline; none of the clients affected by

petitioner's misconduct was seriously harmed; and during the period of his misconduct, petitioner's marriage was the subject of a dissolution proceeding that was very stressful for him, but he has since remarried and established a stable home life.

### D. *Discipline Recommended by the State Bar*

The hearing panel noted that disbarment was authorized under the State Bar's Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct).[3] It concluded, however, that the factors in mitigation were more compelling than those in aggravation, and recommended that petitioner be suspended for five years, that execution of the suspension be stayed, and that petitioner be placed on probation for five years subject to specified conditions, including actual suspension of one year.

The review department, by a vote of seven to six, adopted the hearing panel's recommendation as to discipline except that it increased the period of actual suspension from one year to three years.[4] The review department recommended a longer period of actual suspension because petitioner had only one year of successful drug rehabilitation rather than two years, and because it did not believe petitioner's misconduct was entirely attributable to his physical condition.

### DISCUSSION

 As the review department found, petitioner's actions in the matters in issue in this proceeding disclose a pattern of willful disregard of his professional obligations, including the failure to perform services and to communicate with clients, amounting to abandonment of his clients, failure to return unearned fees, and failure to respond to the State Bar.

 We have often stated that client abandonment is "serious misconduct that constitutes a breach of the fiduciary duty owed by an attorney to the client and, accordingly, warrants substantial discipline." (*Stanley* v. *State Bar* (1990) 50 Cal.3d 555, 566 [268 Cal.Rptr. 183, 788 P.2d 697].) Indeed, an attorney's habitual disregard for the interests of his or her clients combined with failure to communicate with those clients is grounds for disbarment. (*Farnham* v. *State Bar* (1988) 47 Cal.3d 429, 446 [253 Cal.Rptr. 249, 763 P.2d 1339]; *Slaten* v. *State Bar* (1988) 46 Cal.3d 48, 63

---

[3] All further references to standards are to these provisions.

[4] Two of the six dissenting members viewed the recommended discipline as insufficient; four considered it excessive.

[249 Cal.Rptr. 289, 757 P.2d 1].) Furthermore, petitioner's misconduct occurred over a period in excess of four years. In previous cases, we have imposed substantial periods of actual suspension or disbarment when an attorney's multiple acts of wrongdoing over a period of years amounted to a continuous course of serious professional misconduct. (See, e.g., *Pineda* v. *State Bar* (1989) 49 Cal.3d 753 [263 Cal.Rptr. 377, 781 P.2d 1] [two years' actual suspension]; *Arden* v. *State Bar* (1987) 43 Cal.3d 713 [239 Cal.Rptr. 68, 739 P.2d 1236, 79 A.L.R.4th 559] [disbarment].)

The review department correctly observed that the discipline specified by the standards for petitioner's acts of misconduct is either disbarment or suspension. (See stds. 2.4(a) ["Culpability of a member of a pattern of wilfully failing to perform services demonstrating the member's abandonment of the causes in which he or she was retained shall result in disbarment"], 2.6(a) ["disbarment or suspension, depending on the gravity of the offense or the harm, if any, to the victim" shall be imposed for violations of § 6068].) ■ Although we exercise our independent judgment in determining the appropriate level of discipline to be imposed in any given case, we generally will not reject a recommendation of the review department arising from application of the standards unless we have grave doubts about the propriety of the recommended discipline. (*In re Billings* (1990) 50 Cal.3d 358, 368 [267 Cal.Rptr. 319, 787 P.2d 617].)

■ Petitioner contends that the discipline recommended by the review department is excessive, and that an actual suspension from the practice of law is not necessary to protect the public because his misconduct was caused by his mental disorder and his alcohol and drug abuse, and because he now has these problems under control.

■ An attorney's rehabilitation from alcoholism or other substance abuse is entitled to significant weight in mitigation if the attorney establishes these elements: (1) the abuse was addictive in nature, (2) the abuse causally contributed to the misconduct, and (3) the attorney has undergone a meaningful and sustained period of rehabilitation. (*In re Billings, supra*, 50 Cal.3d 358, 367.) Similarly, a mental disorder is entitled to mitigating weight if it causally contributed to the misconduct and if the disorder has since been cured or so controlled that it is unlikely to again lead to misconduct. (*In re Naney* (1990) 51 Cal.3d 186, 197 [270 Cal.Rptr. 848, 793 P.2d 54].)

■ Here, the first element is not in dispute. Petitioner's abuse of alcohol and methamphetamines was addictive in nature, and he suffers from a recognized mental disturbance, bipolar affective disorder. Although the review department concluded that petitioner's misconduct was not entirely

attributable to his physical condition, and although the evidence of causation is not overwhelming, we are satisfied from our review of the record that the second element has also been sufficiently established: petitioner's mental disorder, and his addictive use of alcohol and methamphetamines, did substantially contribute to the misconduct.

The third and final element is rehabilitation. At the time of the State Bar hearing, petitioner had demonstrated rehabilitation for slightly less than one year. Petitioner has, however, submitted a letter from his treating physician, dated November 23, 1988, indicating that petitioner has continued (1) to take his medication, (2) to abstain from alcohol and methamphetamines, and (3) to lead a stable and productive life. ■ Although we are generally reluctant to consider evidence not presented to the review department, we will do so when it is the only means by which an attorney can meet the heavy burden of proving recovery from substance addiction or mental disorder. (*In re Billings, supra*, 50 Cal.3d 358, 367.) ■ The State Bar does not dispute the accuracy of the statements made in the letter, and we will therefore find that petitioner has now demonstrated a meaningful and sustained period of successful rehabilitation.

■ The absence of a prior disciplinary record is another important mitigating circumstance, particularly when an attorney has practiced for many years without misconduct. (*Shapiro* v. *State Bar* (1990) 51 Cal.3d 251, 259 [271 Cal.Rptr. 851, 794 P.2d 572].) ■ Here, the record indicates that petitioner was actively engaged in the practice of law for over 10 years before the first act of misconduct in 1981. In determining the appropriate penalty, we give this circumstance significant weight in mitigation.

Because petitioner has furnished us with persuasive evidence, not available to the review department, that he has successfully completed a meaningful and sustained period of rehabilitation, we conclude that the discipline recommended by the review department is excessive and that the purposes of attorney discipline are better served by imposing one year, rather than three years, of actual suspension from the practice of law.

### DISPOSITION

We order that William Ray Hawes be suspended from the practice of law for five years from the date this opinion is final but that execution of the suspension order be stayed and that he be placed on probation for five years on all the conditions of probation adopted by the review department at its June 16, 1988, meeting, except that he shall be actually suspended for only the first year, rather than the first three years, of the probationary period.

It is further ordered that William Ray Hawes comply with the requirements of rule 955 of the California Rules of Court, that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order (under § 6126, subd. (c), failure to comply with rule 955 of the California Rules of Court may result in imprisonment), and that he take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners within one year of the effective date of this order.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)