[No. S014194. Feb. 21, 1991.]

JAMES BLEDSOE III, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Sands, Mason, Laidley & Lawson and Kenneth C. Mason for Petitioner.

Diane C. Yu, Richard J. Zanassi, Colin P. Wong and James R. DiFrank for Respondent.

OPINION

**THE COURT.**—We review the recommendation of the State Bar that petitioner James Bledsoe III be disbarred from the practice of law. The

recommendation is based on findings of professional misconduct in four matters. After considering the record and the arguments of petitioner and the State Bar, we conclude the recommended discipline is too severe. We therefore suspend petitioner from the practice of law for five years, stay his suspension, and place him on probation for five years on conditions including actual suspension for two years and restitution to his clients.

## I.  FACTS AND PROCEEDINGS BEFORE THE STATE BAR COURT

Petitioner was admitted to the practice of law in this state on June 2, 1972. He has no record of prior discipline.

On October 17, 1988, the Office of Trial Counsel of the State Bar (Office) served on petitioner[1] a notice to show cause charging him with five counts of professional misconduct. The notice advised him that a default could be entered if he failed to file a written answer to the notice within 20 days. The notice also advised him that an entry of default could result in an admission of the charged misconduct and constitute a bar to further participation in the proceedings. Petitioner failed to answer the notice.

On November 16, 1988, the Office served petitioner with a notice of application to enter default. The notice contained the same warning as the notice to show cause. Petitioner again failed to answer the notice.

On December 13, 1988, the Office served petitioner with a notice of entry of default. The notice stated that default had been entered for failure to file a written answer to the notice to show cause; the misconduct charged had been deemed admitted and discipline could be recommended or imposed; and further participation was prohibited unless and until the default was set aside by a timely and sufficient motion.

After receiving the default notice, petitioner retained counsel. Under the State Bar Rules of Procedure, rule 555.1(b),[2] a petitioner may seek relief from default within 75 days after entry of default. Before the expiration of this period, however, and without petitioner's knowledge, the State Bar held a default hearing. The referee's findings and conclusions after that hearing are as follows.

As to count 1, in January 1979 Dorothy Paul employed petitioner to represent her son in a personal injury matter. Although petitioner filed a complaint in January 1982, he thereafter failed to further perform services

---

[1] The Office served all notices by certified mail to petitioner's address of record.
[2] All further references herein to rules are to the State Bar Rules of Procedure.

or communicate with his client. In addition, he withdrew from employment without giving due notice or delivering to his client the necessary papers. As a result, the case was dismissed for lack of prosecution.

As to count 2, in March 1987 Josephine McFarland employed petitioner to represent her in a civil matter against LaVerne University in a dispute involving her degree. Petitioner failed to perform the required services, failed to communicate with his client, and failed to refund $800 in advance legal fees. As a result of Ms. McFarland's loss of her $800, she has been unable to pursue her claim.

As to count 3, in February 1986 Rochelle Garrison employed petitioner to probate her mother's estate and advanced $300 for costs. Although petitioner told Ms. Garrison the estate was finalized and requested additional payment, he in fact failed to complete performance of the required services. As a result, the estate incurred additional costs.

As to count 4, in January 1985 Jessica Patton employed petitioner to represent her in a marital dissolution action. She paid him $300 in advances attorney fees. Petitioner failed to perform the required services, failed to communicate with his client, and failed to refund the unearned fees.

Finally, as to count 5, which concerned the State Bar investigation, petitioner failed to respond to letters regarding the allegations in counts 2 and 4 or otherwise cooperate with the State Bar.

The referee concluded petitioner had wilfully and as a pattern of conduct abandoned his clients, violated his oath, failed to perform services, and wrongfully withdrew from representation. He also concluded petitioner's conduct reflected acts constituting moral turpitude and affirmative misrepresentation to his clients regarding the status of their cases. The referee noted petitioner's lack of prior discipline but believed this mitigating circumstance was outweighed by "his failure to be here or to involve himself with this proceeding which he had apparent knowledge of . . . ." Relying on the Standards for Attorney Sanctions for Professional Misconduct, Rules of Procedure of the State Bar, division V, standards 2.3 and 2.4(a), the referee recommended petitioner be disbarred.[3]

---

[3] Standard 2.3 provides, "[c]ulpability of a member of an act of moral turpitude, fraud, or intentional dishonesty toward a . . . client . . . shall result in actual suspension or disbarment."

Standard 2.4(a) provides, "[c]ulpability of a member of a pattern of wilfully failing to perform services demonstrating the member's abandonment of the causes in which he or she was retained shall result in disbarment."

All further references herein to standards are to the Standards for Attorney Sanctions for Professional Misconduct.

On February 21, 1989, without knowledge of the referee's decision, petitioner filed a motion to set aside the default. He alleged the default was taken as a result of mistake, inadvertence, surprise or excusable neglect because he was in the process of changing his business address; his brother was supposed to deliver his correspondence; he was engaged almost continuously in criminal trials; for reasons unknown, he did not receive the State Bar correspondence; and he was short of funds and thus did not employ an attorney until January 1989. After hearing the motion and the State Bar's opposition, the referee denied the motion.

On May 5, 1989, petitioner attempted to file a motion to reconsider the denial of his motion to set aside the default. This motion was not filed, however, because rule 552.1(c) prohibits further participation in State Bar proceedings by an attorney whose default has been taken.

On August 31, 1989, the Review Department of the State Bar Court held a hearing on two issues: whether it had the authority to relieve petitioner from the default and whether the degree of discipline recommended was excessive. During the hearing, the chairman of the review department expressed concern that there was an insufficient factual basis to recommend disbarment because of the default. Nevertheless, on October 30, 1989, by a vote of eleven to two with one abstention, the review department voted to adopt the hearing panel's recommendation. ■ ■ fn. ■ Five members of the majority, however, voted to adopt the recommendation solely on the ground that the review department lacked jurisdiction to overrule the denial of the motion to set aside the default.[4]

## II. Discussion

■ "The object of disciplinary proceedings is to protect the public and the courts, and to preserve confidence in the legal profession. In deciding the proper sanctions, the court considers all relevant factors and mitigating circumstances on a case-by-case basis. [Citation.] Our duty is to examine the record, weigh the evidence, and make an independent assessment

---

[4]Petitioner asks our guidance to clarify the review department's authority to set aside a default. Yet, even assuming the review department had the authority, after reviewing the record we do not believe petitioner is entitled to a remand on this ground.

Rule 555.1 provides that a petitioner may seek relief from default on the grounds of mistake, inadvertence, surprise or excusable neglect. Here, petitioner stated he was entitled to relief on each of these grounds because he did not receive the State Bar correspondence. He is mistaken. Actual notice is not a necessary element in disciplinary proceedings. (*Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1186 [248 Cal.Rptr. 830, 756 P.2d 217].) Notices are deemed served at the time of the mailing regardless of whether they are actually received by the attorney. (*Ibid.*) Because the State Bar properly mailed the notices, petitioner failed to meet the standards for relief from default.

whether the review department's recommendations should be upheld. [Citation.] The burden is on petitioner to demonstrate that the review department's decision should not be followed." (*Young* v. *State Bar* (1990) 50 Cal.3d 1204, 1215-1216 [270 Cal.Rptr. 315, 791 P.2d 994].)

Petitioner concedes that his default resulted in an admission of the charges against him and that some discipline is in order. Nevertheless, he contends the recommended discipline is excessive. He argues that his conduct did not amount to a *pattern* of misconduct justifying disbarment under standard 2.4(a). Instead, he submits the appropriate classification of his conduct would place it under standard 2.4(b), which provides that a member's wilful failure to perform services in matters not demonstrating a pattern of misconduct shall result in reproval or suspension.

The contention has merit. Although a habitual disregard for clients' interests and the failure to communicate with clients may justify disbarment, decisions that have resulted in disbarment generally involve "serious instances of repeated misconduct over a prolonged period of time." (*Young* v. *State Bar, supra*, 50 Cal.3d at p. 1217.) Thus, in *Kent* v. *State Bar* (1987) 43 Cal.3d 729 [239 Cal.Rptr. 77, 739 P.2d 1244], we held disbarment was the appropriate penalty because the attorney's abandonment of the legal interests of his client resulted in a $330,000 malpractice judgment, he was publicly reproved on two prior occasions for similar misconduct, he was previously suspended for similar failures to perform promised legal services, and in some instances he actively deceived his clients by misrepresenting that he was properly rendering the services for which he had been employed.

In *Slaten* v. *State Bar* (1988) 46 Cal.3d 48 [249 Cal.Rptr. 289, 757 P.2d 1], we also imposed disbarment because the attorney wilfully failed to perform services for seven clients, commingled a client's funds with his own, advised a client to act in violation of the law, and had an extensive discipline record. (See also *McMorris* v. *State Bar* (1983) 35 Cal.3d 77 [196 Cal.Rpt. 841, 672 P.2d 431] [wilful failure to perform services in seven matters involving five clients, with three prior suspensions from practice for various acts of misconduct including failure to perform services for his clients]; *Bowles* v. *State Bar* (1989) 48 Cal.3d 100 [255 Cal.Rptr. 846, 768 P.2d 65] [wilful abandonment of clients in five separate matters, insufficient funds to cover a check drawn on a client trust account, failure to cooperate in the State Bar investigation, two prior suspensions for failure to pay State Bar fees, and a record devoid of mitigating factors].)

In contrast, here petitioner's misconduct involved four clients in seventeen years of practice; although we in no way condone petitioner's actions,

we find no extended "pattern" of wilfully failing to perform services. Petitioner also has no disciplinary record. Although the referee found this factor in mitigation was outweighed by petitioner's lack of cooperation with the State Bar, the referee was influenced by petitioner's failure to appear at the hearing. Yet, because of petitioner's default he received no notice of the time or place of the hearing. While petitioner must certainly bear all adverse consequences of his noncooperation with the State Bar, i.e., admission of the charged misconduct and exclusion from the proceedings, we do not believe he should be doubly penalized for not attending a hearing of which he was not given notice. Therefore, we conclude that the penalty of disbarment appears too severe under the circumstances of this case.

Our next task is to determine what discipline should be imposed. Petitioner, relying on *Gold* v. *State Bar* (1989) 49 Cal.3d 908 [264 Cal.Rptr. 125, 782 P.2d 264], suggests the proper discipline for his misconduct is a one-year suspension, stayed, probation for one year, and restitution to his clients. His reliance is misplaced. In *Gold*, the attorney's misconduct involved only two clients and Gold reimbursed his clients on his own initiative. Here, petitioner's misconduct is unquestionably more serious. He not only wilfully failed to perform services, failed to communicate with his clients, and failed to refund unearned fees, but he also failed to cooperate or participate in the beginning stages of the State Bar investigation. (See *Chang* v. *State Bar* (1989) 49 Cal.3d 114, 128 [260 Cal.Rptr. 280, 775 P.2d 1049] [wilful failure to cooperate or participate in disciplinary investigations itself supports discipline].) Therefore, substantial discipline is required.

Accordingly, it is ordered that James Bledsoe III be suspended from the practice of law for five years. Execution of the order of suspension is stayed and petitioner is placed on probation for five years, with a probation monitor referee to be assigned pursuant to rules 610 and 611, subject to the following conditions:

(1) During the first two years of probation, he is placed on actual suspension from the practice of law.

(2) During the first year of probation, he shall make restitution to his clients.

(3) During the period of probation, he shall comply with the provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California.

(4) During the period of probation, he shall file with the State Bar Court reports concerning his compliance with the conditions of probation as directed by the probation monitor referee.

(5) Before the expiration of his period of actual suspension, petitioner shall take and pass the Professional Responsibility Examination.

(6) Petitioner shall comply with rule 955 of the California Rules of Court, including subdivision (a), within 30 days of the effective date of the decision of this court, and petitioner shall file the affidavit required by California Rules of Court, rule 955(c), within 40 days of the effective date of this decision.

This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)

LUCAS, C. J.—I respectfully dissent. I cannot agree with the majority's conclusion that there was no pattern of misconduct, or with its statement that petitioner was "doubly penalized for not attending a hearing of which he was not given notice." (Maj. opn., *ante*, at p. 1080.)

A. *Pattern of Abandonment*

The habitual disregard of clients' interests constitutes moral turpitude that warrants disbarment. (*Stanley* v. *State Bar* (1990) 50 Cal.3d 555, 566 [268 Cal.Rptr. 183, 788 P.2d 697].) The Standards for Attorney Sanctions for Professional Misconduct provide, "Culpability of a member of a pattern of wilfully failing to perform services demonstrating the member's abandonment of the causes in which he or she was retained shall result in disbarment." (Std. 2.4(a), Stds. for Atty. Sanctions for Prof. Misconduct (Rules Proc. of State Bar, div. V) [hereafter standards].) The majority acknowledges the foregoing, yet because "petitioner's misconduct involved four clients in seventeen years of practice," it "find[s] no extended 'pattern' of wilfully failing to perform services." (Maj. opn., *ante*, at p. 1080.) If the majority accurately characterized this case as involving four acts of misconduct spread over seventeen years, I might agree that there is no pattern. I do not, however, find that description supported by the record.

The facts show that petitioner committed four significant acts of client abandonment over a period of *five* years, culminating in his failure to cooperate with the State Bar in these proceedings during the year immediately following the last act of abandonment. In *Hawes* v. *State Bar* (1990) 51 Cal.3d 587 [274 Cal.Rptr. 2, 797 P.2d 1180], we disciplined an attorney based on a pattern of client abandonment. The attorney was admitted to practice in 1970 and abandoned several clients between 1981 to 1985. In our discussion of the appropriate level of discipline, we noted that the absence of a prior disciplinary record was evidence in mitigation and that the "petitioner was actively engaged in the practice of law for over 10 years before

the first act of misconduct in 1981." (*Id.* at p. 596.) We also observed that "petitioner's misconduct occurred over a period in excess of four years." (*Id.* at p. 595.) We thus recognized that there were two time periods relevant to different aspects of our inquiry. A significant period spanning admission to practice to the date of the first incident in a possible pattern of abandonment may serve as a mitigating factor. But in determining whether a pattern of abandonment exists, we separately consider the period during which the acts of abandonment occurred to see whether a pattern evolved.

The majority paints with too broad a brush and uses petitioner's entire 17 years of practice as the basis for determining whether a pattern exists. Focusing on that period is inappropriate because it distorts the impact of petitioner's misconduct. According to our analysis in *Hawes* (*supra*, 51 Cal.3d 587), petitioner's prior 12 years of practice without incurring discipline should be viewed only as a mitigating factor but should not dilute the evidence of a more recent pattern of neglect.

Petitioner's abandonment of four clients took place over a five-year period. He failed to communicate, failed to perform services, and failed to refund fees. In three instances, the abandonment prejudiced the client: Dorothy Paul's case was dismissed for lack of prosecution; Josephine McFarland was unable to pursue her claim; and the estate of Rochelle Garrison's mother incurred additional costs. In my view, the timing of the acts of abandonment and the similarity of the conduct involved reveals a pattern of wilful abandonment.

## B. *Petitioner Was Not Doubly Penalized*

According to the majority, the referee was unduly influenced "by petitioner's failure to appear at the hearing" when he concluded that the evidence in mitigation was out-weighed by petitioner's lack of cooperation with the State Bar. The majority states, "[B]ecause of petitioner's default he received no notice of the time or place of the hearing. While petitioner must certainly bear all adverse consequences of his noncooperation with the State Bar, i.e., admission of the charged misconduct and exclusion from the proceedings, we do not believe he should be doubly penalized for not attending a hearing of which he was not given notice." (Maj. opn., *ante*, at p. 1080.) Because the majority's premises are flawed, it erroneously concludes petitioner was doubly penalized.

First, the majority reads the record too narrowly when it states that the referee was influenced by petitioner's failure to appear. The referee commented that "the silence of the respondent and his failure to be here or to involve himself with this proceeding which he had apparent knowledge of,

including conversations with counsel, significantly tips the balance in my mind in favor of the disbarment sanctions. If he doesn't care, then he's best out of the profession." I do not take this to mean that the referee relied only on petitioner's failure to attend the default hearing over which the referee presided. Rather, the referee was referring to petitioner's general lack of involvement in all aspects of the State Bar's disciplinary proceedings, from their commencement to their resolution at the default hearing. The standards provide that an attorney's failure to cooperate with the State Bar should be considered as an aggravating factor. (Std. 1.2(b)(vi).)

Petitioner studiously ignored the entire disciplinary process. A notice to show cause was served on him. He did not respond. A notice of application to enter default was served on him. He did not respond. A notice of entry of default was served on him, which informed him of the applicable time frames and advised that if he wished to participate he should request relief from his default. Although he and his attorney each contacted the State Bar once, petitioner did not further participate in the proceedings until after the time had passed for holding the default hearing. The referee correctly concluded that petitioner failed to involve himself in the proceedings and that his omission was sufficiently aggravating to outweigh the mitigation presented.

Thus, petitioner was not *doubly* penalized for failing to attend. Rather, he was properly penalized *once* for his failure in toto to cooperate with the State Bar. As noted by the majority, one aspect of this penalty was that petitioner was deemed to admit the charged misconduct. Another aspect, also noted by the majority, was that he was barred from participating. Yet another consequence was that the referee could, and should, consider petitioner's complete lack of cooperation from the time the disciplinary machinery was activated until the referee rendered his decision. Petitioner was duly notified of the consequences of his inaction and failed to respond. Indeed, his failure to protect his own interests further highlights the attitude reflected in his handling of his clients' affairs. The referee properly doubted that an attorney who cared so little about his own profession would act to protect the interests of his clients.

The second and more specific premise for the majority's conclusion that petitioner was doubly penalized is that he had no notice of the hearing. Although it is technically accurate that he "received no notice of the time or place of the hearing," the majority's phrasing implies that petitioner was unfairly sandbagged. He was not. He knew from the notice to show cause served on him that if he failed to answer within 20 days, a default could be entered resulting in his being barred from further participation in the proceedings. The notice of application to enter default likewise advised him of

such a bar. The notice of the entry of default specifically informed petitioner that he "may not participate further in these state bar proceedings unless and until your default is set aside on motion timely made" and that "the matter will proceed to default hearing on a Master Calendar day not to exceed 60 days from the day of filing of this Notice . . . ." Nonetheless, petitioner failed to take any action to set aside the default or to inquire into the date of the hearing *until after the 60-day period had elapsed.*

Although it is true that petitioner had 75 days in which to seek relief from default, it is equally true that he knew that a hearing would be held in 60 days and that if he wanted to participate, he had to request relief from the default. Evidently, he was content not to seek default relief in time to participate in the hearing and, concomitantly, not to participate. To the extent that the referee was referring to petitioner's failure to be present at the default hearing, the referee was not penalizing petitioner for failing to attend a hearing of which he had no notice. Petitioner chose to continue to ignore the disciplinary proceedings during the time in which he *knew* a hearing would be held. Any lack of notice resulted from his own unresponsiveness. The referee could properly draw an adverse inference from this behavior. Doing so would not result in a double penalty but would merely be one of the adverse consequences of his failure to cooperate that the majority recognizes petitioner must bear.

## C. *Conclusion*

I believe a pattern of client abandonment was established that, in conjunction with petitioner's knowing election not to participate in the default hearing, warrants disbarment under *Stanley* v. *State Bar*, *supra*, 50 Cal.3d 555, and standard 2.4(a).

Kennard, J., concurred.