[No. S011981. Dec. 24, 1990.]

EDWARD MARTIN ARONIN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Lily Barry for Petitioner.

Diane C. Yu, Richard J. Zanassi and Allen Blumenthal for Respondent.

**OPINION**

**THE COURT.**—The Review Department of the State Bar Court recommends that petitioner Edward Martin Aronin be suspended from the practice of law for five years and that execution of his suspension be stayed subject to certain conditions including actual suspension for two years. The review department rejected a State Bar referee's recommendation that petitioner be publicly reproved rather than suspended. Petitioner contends that several of the review department's findings are not supported by the evidence and that the discipline recommendation is excessive.

We agree that the review department's factual findings are erroneous in part. (The review department acknowledges some of its errors.) For that reason, its discipline recommendation is excessive. We reject, however, petitioner's contention that no suspension is warranted. Petitioner should be suspended for a period of three years, but execution of the suspension shall be stayed subject to conditions including an actual suspension of nine months.

FACTS

The State Bar Court issued a notice to show cause, alleging that petitioner had committed professional misconduct in four unrelated client matters. (The notice was later amended to include additional factual allegations.) The charges were heard by retired Superior Court Judge James Judge, acting as referee. After six days of hearing, the referee issued a decision recommending that petitioner be publicly reproved, that he make restitu-

tion of $700 to one client, and that he pass the Professional Responsibility Examination within six months of the referee's decision.

The State Bar Office of Trial Counsel requested review on the grounds that: (1) the referee's findings of fact and conclusions of law were not supported by the evidence, and (2) the recommended discipline was insufficient. The review department adopted new findings of fact and conclusions of law. Several were in addition to and, in some instances, contrary to the referee's findings and conclusions. The review department also rejected the referee's discipline recommendation and selected the more severe discipline of a five-year suspension stayed subject to various conditions including probation and an actual suspension for two years.

Petitioner accepts the referee's findings and conclusions. (For that reason we need not set forth in detail the evidence that gave rise to those findings and conclusions.) Petitioner contends, however, that the review department's findings and conclusions are not supported by clear and convincing proof, and that any period of suspension is excessive discipline.

## DISCUSSION

### A. *The Nance matter*

#### 1. *Referee's findings and conclusions*

Petitioner was employed by Benjamin and Margaret Nance to appeal a superior court judgment. He was paid $7,500 in attorney fees and $1,000 in advanced costs. Petitioner deposited the entire $8,500 into his savings account rather than into a client trust account, thus commingling the $1,000 in advanced costs with his own personal funds.

A court reporter submitted to petitioner an estimate of costs to prepare the reporter's transcript on appeal. Two months later, the reporter had not received payment, and she contacted petitioner. He falsely told her that he had a cancelled check with her endorsement. She reviewed her records and again informed petitioner that she had not been paid. He sent her a check that was returned by the bank as being drawn against insufficient funds. When the reporter notified him of this, he again falsely stated the first check had been cashed, depleting his bank account and causing the second check to be returned. Petitioner wrote a certified check to the reporter.

The referee concluded petitioner had violated rule 8-101(A) of the former Rules of Professional Conduct of the State Bar by failing to deposit the $1,000 advanced costs into a client trust account and by commingling them

with his personal funds.[1] The referee also found a violation of rule 6-101 and Business and Professions Code section 6103 (willful violation of attorney's oath and duties) in petitioner's failure to make timely payment of the court reporter's fees and in his false statements to her.[2] The referee noted that court rules provide for nullification of a notice of appeal if a court reporter's cost estimate is not paid within 10 days after the estimate is given. Petitioner waited two months and then attempted payment with a bad check. The referee, however, found that petitioner did not act with moral turpitude and did not intend to defraud the reporter.

## 2. *Review department findings and conclusions*

The review department made several additional findings of fact, which petitioner challenges. ■ The standard of review in this court is clear. "The findings of the panel and review department must be given great weight and the burden is on petitioner to show that they are erroneous . . . but that burden may be met by a demonstration that the charges of unprofessional conduct are not sustained by *convincing proof to a reasonable certainty.*" (*McCray* v. *State Bar* (1985) 38 Cal.3d 257, 263 [211 Cal.Rptr. 691, 696 P.2d 83], italics added.)

In connection with petitioner's dealings with the court reporter, the review department found that "In fact, there was no 'first check' and the only check which Respondent [petitioner here] had written was the one that failed to clear and was returned for insufficient funds." We reject this finding, which appears to be inadvertent. It was included in a paragraph copied from the referee's original decision. Petitioner, however, requested reconsideration by the referee on the ground that the question whether there was a "first check" had not been raised in the notice to show cause or at the hearing before the referee. (The narrow question presented to the referee was only whether petitioner falsely represented that the check had

---

[1] All further references to "rules" are to the former Rules of Professional Conduct of the State Bar, which were approved by this court on December 31, 1974. Petitioner's misconduct occurred before the current rules became operative on May 27, 1989.

Rule 8-101(A) stated, "All funds received or held for the benefit of clients by a member of the State Bar or firm of which he is a member, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labeled 'Trust Account', 'Client's Funds Account' or words of similar import . . . and no funds belonging to the member of the State Bar or firm of which he is a member shall be deposited therein or otherwise commingled therewith . . . ."

[2] Rule 6-101 stated, "A member of the State Bar shall not wilfully or habitually . . . [¶] (2) Fail to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to accomplish, with reasonable speed, the purpose for which he is employed." Business and Professions Code section 6103 states, "[A]ny violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension."

been cashed, not whether he falsely represented that it had been mailed.) The State Bar examiner did not object to petitioner's request, and the referee deleted the finding from his decision. Moreover, petitioner presented evidence in support of his reconsideration request that a "first check" had in fact been mailed.

Nor is there convincing proof to support the review department's finding that petitioner intended to defraud the court reporter. Petitioner's statement that he had a cancelled check was false but does not necessarily show any intent to defraud. The reporter had not yet performed any services, and petitioner did pay her by certified check in a relatively short time after the payment problem arose. Nor is there any evidence he intentionally drew the check against insufficient funds. ■ The referee, who heard the testimony of both petitioner and the reporter, found no intent to defraud. We give great weight to a referee's finding as to intent. (*Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 708 [224 Cal.Rptr. 738, 715 P.2d 699]; Rules Proc. of State Bar, rule 452.)

The review department also made several findings as to a fee dispute that arose after the appeal. The fee agreement provided that if the appeal were unsuccessful, which it was, petitioner would refund $2,000 of his fee. He contended his clients subsequently asked him to apply the refund to a different matter and that he did so. The clients disclaimed any such understanding. The evidence was sharply conflicting on this point, and the referee did not find misconduct. The referee was in a better position than the review department to decide this point. (*Blair* v. *State Bar* (1989) 49 Cal.3d 762, 775 [224 Cal.Rptr. 738, 715 P.2d 699] [great weight given to referee's findings as to witness credibility].)

■ Moreover, we are troubled by the review department's findings on this point. The review department's decision states that petitioner took "one year to advise the client that he had lost the appeal." This statement is wrong and misleading. The Court of Appeal filed its decision on December 31, 1984. Petitioner notified his client of the decision no later than the following month, January 1985. The change in calendar years does not support the finding that petitioner delayed notifying his clients for one year. The State Bar now acknowledges the correct dates but refuses to admit its error.

### 3. *Our findings and conclusions*

With regard to the Nance matter, we adopt the referee's findings and conclusions. The review department's additional findings and conclusions are not supported by convincing proof. ■ Petitioner violated rule 8-

101(A) by failing to deposit the $1,000 advanced costs into a client trust account and by commingling them with his personal funds. Petitioner contends he did so to protect the client funds because both his former secretary and his wife, who was a compulsive gambler, had previously "invaded" his client trust account. This is not persuasive. Petitioner fails to explain why he did not open a client trust account as to which his secretary and wife would have had no knowledge or access. Doing so would have been simple. Petitioner also violated rule 6-101 and Business and Professions Code section 6103 by failing to make timely payment of the court reporter's fees and by falsely stating that he had in his possession a cancelled check for payment of her fees.

## B. *The Daniels/Henry matter*

### 1. *Referee's findings and conclusions*

Petitioner was hired by two individuals, Daniels and Henry, to represent them in two real estate matters. The referee found two instances of misconduct. First, petitioner received $700 in advanced costs for depositions. He failed to deposit the $700 into a client trust account and did not use the money to pay costs of the depositions, which were not taken. Petitioner contended before the referee that the $700 was payment of additional attorney fees for preparing written interrogatories that were never served. The referee found the $700 was advanced for costs, the money was not spent, and it was not returned to the clients at their request after they terminated petitioner's services.

Second, petitioner signed the name of his clients on a verification of an answer to a complaint for unlawful detainer. (Petitioner does not recall having done so but does not deny the charge.) The referee found no convincing evidence of a lack of client consent to the signatures and found, "It was not a forgery, and no one was harmed or misled." The referee also rejected the State Bar's allegations that petitioner had failed to appear at trial or that he had charged an exorbitant fee.

The referee concluded that petitioner had violated rule 8-101(B)(4) by failing to refund the $700 unexpended costs on the client's request, but that petitioner acted without dishonesty or moral turpitude.[3]

---

[3] Rule 8-101(B) stated, "A member of the State Bar shall:
. . . [¶] (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the member of the State Bar which the client is entitled to receive."

## 2. *Review department findings and conclusions*

The review department adopted the referee's findings as to the $700 in advanced costs but rejected his other findings. The review department found that petitioner: (1) willfully forged his clients' signatures without their knowledge or consent; (2) failed to appear at trial and failed to communicate with his client; (3) charged an unconscionable fee of $6,500 and performed incompetently; and (4) failed to deliver the client's file to a new attorney when requested to do so.

The review department concluded that petitioner had violated the following professional standards: rules 8-101(A) and 8-101(B)(4) (failure to deposit advanced costs into trust account and commingling funds); rule 2-111(A)(2) (improper withdrawal from case); rule 2-111(A)(3) (failure to refund unearned fees); rule 2-107 (unconscionable fee); and Business and Professions Code sections 6068, subdivision (a) (specification of duties), 6103 (violation of oath and duties), and 6106 (dishonesty and moral turpitude).

## 3. *Our findings and conclusions*

We adopt the referee's findings and conclusions with one exception. The review department's findings and conclusions to the contrary are not supported by convincing proof.

a. *Unconscionable fee* — ■ The review department appears to be uncertain as to the amount of the fee. The review department's findings state the fee was $6,500. In its brief to this court, the State Bar variously contends the fee was approximately $4,700, $5,300, or $8,000. This inability to specify the amount of the fee casts doubt on the conclusion that it was unconscionable. More important, there is little evidence to support the finding of an unconscionable fee. The referee, a retired judge with 20 years of court experience, found the fee was *not* exorbitant. The review department based its contrary finding on the testimony of two attorneys, both of whom were retained by Daniels and Henry after they terminated petitioner's services. One of them, Carl Sherman, testified only that petitioner's fee seemed high. Of course, a fee that "seems high" or even one that is in fact high is not the same as an unconscionable fee. (*Herrscher* v. *State Bar* (1935) 4 Cal.2d 399, 402 [49 P.2d 832].) The other attorney did testify that she viewed the fee as unconscionable, but her testimony must be viewed with caution because she had filed a malpractice action against petitioner on behalf of Daniels and Henry. A third attorney, Peter Ronay, testified that petitioner's fee was not unconscionable. At most, there is testimony by one interested witness that the fee was unconscionable. Even viewed generously

in favor of the State Bar, this limited evidence is far from clear and convincing proof of an unconscionable fee.

b. *Failure to communicate* —The review department found that petitioner failed to communicate with his clients. The State Bar now admits, however, that its examiner had previously stipulated this allegation would be stricken from the notice to show cause. This finding is contrary to the stipulation.

c. *Failure to forward file* —The findings state that petitioner failed to forward his clients' file to their new attorney. The State Bar has reversed its position, now claiming "it appears that" petitioner forwarded the file as requested.

d. *Failure to appear at trial* —Contrary to the referee's decision, the review department found that petitioner failed to appear at trial. The basis for this finding is not clear. When the State Bar's Office of Trial Counsel sought review by the review department, counsel did not object to the referee's finding on this point. Similarly, the State Bar refers only indirectly to this finding in its brief to this court. The finding is apparently based on client Daniels's testimony that approximately two weeks before trial petitioner insisted on payment of an additional $5,000 in order to try her case. (Daniels's testimony must be viewed with caution in light of her subsequent malpractice action against petitioner.) Petitioner denies any such demand. **(6)** Because there is conflicting testimony, we give great weight to the referee's findings as to witness credibility. (*Blair* v. *State Bar, supra*, 49 Cal.3d 762, 775.) Even if such a demand was made and it was improper under the fee agreement, the State Bar fails to explain how the demand constituted a failure to appear at a trial that had not yet begun when petitioner was discharged by his client.

e. *Verification of clients' answer* —The State Bar contends petitioner "willfully forged" his clients' signatures to their verified answer to a complaint for unlawful detainer. Petitioner does not recall whether he signed his clients' names, but does not deny having done so. His secretary testified the signatures were petitioner's handwriting but that client Daniels had orally authorized petitioner to verify the answer for her and client Henry. Daniels testified she never authorized petitioner or his office to sign her name on any document, and that she was never consulted as to the answer to the complaint.

Relying on Penal Code section 470's definition of forgery, petitioner contends his action was not a forgery because he did not intend to defraud and because he believed he had authority to sign his clients' names. Both

petitioner and the State Bar miss the mark by concentrating on the notion of forgery. ■ The more important point is whether the conduct, whatever its label, was misconduct. It was. Code of Civil Procedure section 446 specifies the circumstances under which an attorney may verify a pleading on behalf of his client and requires that when the attorney does so he shall set forth by affidavit "the reasons why it [the verification] is not made by one of the parties." Petitioner, even if he was authorized to verify his clients' complaint, failed to comply with the statute. Moreover, his signatures were obviously misleading because they constituted a representation that the clients had in fact signed the document. On very similar facts, we have cautioned that, "Such conduct should not be condoned." (*Hallinan* v. *State Bar* (1948) 33 Cal.2d 246, 249 [200 P.2d 787].) Petitioner necessarily intended to cause the trial court and opposing parties in the unlawful detainer action to believe that *his clients* had verified their answer. This was an intentional deception and thus constituted moral turpitude.

We conclude that: (1) Petitioner violated rule 8-101(A) by failing to deposit advanced costs into a client trust account and commingling those funds with his own; (2) petitioner violated rule 8-101(B)(4) by failing to return the unexpended costs to the client; and (3) petitioner violated Business and Professions Code section 6106 by signing his clients' names to a pleading.

## C. *The Segovia matter*

### 1. *Referee's findings and conclusions*

On or about November 14, 1983, Brenda Segovia hired petitioner to recover a $400 lease deposit. She paid petitioner $775 in attorney fees and costs. Thereafter for a period of many months in 1984 and 1985, the client made numerous telephone calls to petitioner to determine the status of her matter. Petitioner did not return her calls. The referee concluded that petitioner violated Business and Professions Code sections 6103 and 6068 by failing to respond promptly to the reasonable inquiries of his client and by failing to keep her informed of significant developments in the matter. The referee concluded, however, that the State Bar failed to show by clear and convincing evidence that petitioner failed to perform legal services, to render an accounting, to refund unearned fees or costs, or to forward the client's file to her new attorney on request.

### 2. *Review department findings and conclusions*

The review department adopted the referee's finding that petitioner failed to communicate with his client. Contrary, however, to the referee's

decision, the review department also found petitioner failed to perform the services for which he was hired, failed to forward the client's file to her new attorney, and failed to refund unearned fees. Based on these findings, the review department concluded that petitioner violated Business and Professions Code sections 6068, subdivision (a), and 6103, and rules 2-111(A)(2) and 2-111(A)(3).

### 3. *Our findings and conclusions*

a. We adopt the review department's conclusion that petitioner failed to communicate with his client in violation of Business and Professions Code sections 6068, subdivision (a) and 6103. Petitioner does not dispute this conclusion.

b. The State Bar has indicated it is no longer certain that petitioner failed to forward the client's file to her new counsel. We therefore reject that finding as a basis for discipline.

c. We agree with the referee that the evidence does not support a finding that petitioner failed to return unearned fees. Although petitioner did not vigorously pursue the matter on behalf of his client, he apparently did perform the following services: (1) client consultation (one hour), (2) settlement conversations (two hours), and (3) drafting a complaint (three hours). On the record before us, we cannot determine whether these efforts entitled petitioner to the $775 paid by Segovia. The review department itself failed to determine the amount of the unearned fee, if any. The finding of a failure to return unearned fees is therefore not supported by clear and convincing evidence.

### D. *The Louk matter*

### 1. *Referee's findings and conclusions*

Shirley Louk retained petitioner to represent her in a marital dissolution action. The written retainer agreement stated "if case settled without trial, total fee [$]3500, if trial, fee $7500." (Punctuation added.) Under the agreement, $3,500 was payable immediately, and Louk would execute in petitioner's favor a note and deed of trust on real property to secure payment of the additional $4,000 that would be payable if the case were tried. Louk executed the trust deed, but petitioner agreed not to record it until the trial, if any. He recorded the trust deed, however, before trial, and in September 1984 received the additional $4,000 from an escrow for the sale of the property.

Petitioner was then aware that Louk disputed his claim to the money, contending that no trial had taken place.

The referee found an absence of convincing evidence that trial had not taken place and that petitioner had thus not earned the additional $4,000. The referee's decision stated, "It appears that a very brief trial occurred, most of the issues being settled, and only one or two brief issues being decided by the court." Based on these findings, the referee concluded there was no misconduct, more specifically, that: (1) Although the client disputed petitioner's right to the $4,000, he did not violate rule 8-101(A)(2) because the money was not from an identifiable client trust fund; and (2) petitioner violated his agreement not to record the trust deed before trial, but the client was not harmed because petitioner subsequently became entitled to record the deed when the trial began.

### 2. *Review department findings and conclusions*

The review department rejected the referee's finding that a trial had been held. The review department also found that petitioner knew his claim to the $4,000 was disputed but failed to deposit it into a trust account. The review department concluded his misconduct was a violation of rule 8-101(A)(2) (disputed trust funds), rule 2-111(A)(3) (failure to return unearned fees), Business and Professions Code sections 6068, subdivision (a) and 6103 (violation of duties), and 6106 (moral turpitude/dishonesty).

### 3. *Our findings and conclusions*

We agree in part with both the referee and the review department. Trial was scheduled for 9 a.m. on November 23, 1983. Petitioner and his opposing counsel appeared for the trial. It was delayed, however, so they could continue settlement negotiations. About noon, they reached a partial oral agreement as to the parties' property division. Counsel and the parties then appeared before the court for approximately 24 minutes. The only disputed issues were the distribution of the proceeds from the sale of a boat and the resolution of a related contempt action. The court resolved both issues and congratulated petitioner and his opposing counsel for having reached a settlement during the morning.

Whether trial was held is debatable. That is not enough. A State Bar finding must be supported by clear and convincing proof. The referee, a trial judge for 20 years, was unable to conclude that no trial had been held. We reject the review department's finding of no trial.

■ Petitioner, however, admits he agreed not to record the deed of trust on his client's property before trial. The trial was held on November 23, 1983. Petitioner recorded the trust deed *before* that date. Even though a trial was later held and he then became entitled to the additional payment, that subsequent development did not retroactively justify his prior recording of the trust deed before he was entitled to do so. At a minimum, the improper recording was a breach of his agreement with his client. The misconduct also placed a cloud on his client's title to the property.

### E. *Aggravating and mitigating factors*

The review department stated that some of the misconduct it found constituted moral turpitude but otherwise found no aggravating factors. (The referee found no moral turpitude or other aggravating factors.)

In mitigation the review department found that petitioner had practiced law his entire 17-year career without any prior misconduct and that at the time of the misconduct now at issue he was under considerable stress caused by his wife's compulsive gambling and willingness to write bad checks and forge his name to checks. We agree that petitioner's prior good record is an additional mitigating factor. (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.2(e)(i) [all further references to standards are to this source]; *Schneider* v. *State Bar* (1987) 43 Cal.3d 784, 798-799 [239 Cal.Rptr. 111, 739 P.2d 1279] [13-year prior unblemished record].) The record also supports the department's conclusion that petitioner was under stress caused by his wife's gambling. (Std. 1.2(e)(iv).)[4]

### F. *The appropriate discipline*

The referee recommended a public reproval, restitution of $700 to one client, and petitioner's passing the Professional Responsibility Examination.

---

[4]The State Bar also apparently considered recommendations as to petitioner's good character and competence by two sitting judges and a court commissioner. It is not clear from the record whether they testified in person in response to State Bar subpenas or voluntarily submitted letters on behalf of petitioner. We note the admonition in canon 2B of the California Code of Judicial Conduct. It states, "Judges *should not testify voluntarily* as character witnesses." (Cal. Code Jud. Conduct, canon 2B [Deering's Cal. Ann. Codes, Rules (Appen.) (1988 ed.) p. 629, 23 West's Cal. Codes Ann. Rules, pt. 2 (1990 supp. pamp.) p. 293], italics added; *In re Rivas* (1989) 49 Cal.3d 794, 798, fn. 6 [263 Cal.Rptr. 654, 781 P.2d 946] [noting canon 2B's proscription of voluntary judicial testimony].) The code commentary states: "The testimony of judges as character witnesses injects the prestige of their office into the proceeding in which they testify and may be misunderstood to be an official testimonial." (Cal. Code Jud. Conduct, canon 2B [West's, *supra*, at p. 293].)

The review department recommended by a vote of thirteen to one that petitioner be suspended for five years stayed subject to conditions including an actual suspension of two years. (The dissenter voted for more severe discipline.) Petitioner is willing to accept the referee's recommendation, but contends the review department's recommendation is excessive.

■■■ We exercise our independent judgment in choosing the appropriate discipline, but we normally give great weight to the review department's recommendation. (*In re Rivas, supra*, 49 Cal.3d 794, 800.) ■■■ In this case, however, we have determined that some of the review department's findings, on which its recommendation is based, are not supported by the requisite clear and convincing proof. The period of suspension recommended by the review department is therefore too long. We nevertheless conclude that substantial discipline is warranted in light of the serious misconduct that is supported by the record.

In both the Nance and Daniels/Henry matters, petitioner violated rule 8-101(A) by failing to deposit client funds into trust accounts and by commingling those funds with his own. In the Daniels/Henry matter, petitioner also violated rule 8-101(B)(4) by failing to return unexpended costs to the client. The Standards for Attorney Sanctions for Professional Misconduct (hereafter Standards) state that a commingling of client funds or other violation of rule 8-101 without a willful misappropriation "shall result in *at least a three month actual suspension* from the practice of law, *irrespective of mitigating circumstances.*" (Std. 2.2(b) (italics added).) The Standards are merely guidelines for imposing discipline, but we see no reason to depart from them in the absence of a compelling reason to do so. (*Blair* v. *State Bar, supra*, 49 Cal.3d 762, 776, fn. 5.) Moreover, petitioner's failure to return unearned fees to former client Daniels is especially troubling. Petitioner purports to accept the referee's finding on this point, but petitioner failed to make restitution to his former client until February 1990, even though the referee's decision was filed in September 1988. This failure suggests a continuing disregard for the rights of petitioner's former client.

In the Daniels/Henry matter, petitioner signed his clients' names to a purportedly verified pleading and in doing so violated Business and Professions Code sections 6068, subdivision (a), 6103, and 6106. This was an act of moral turpitude and intentional dishonesty. Standard 2.3 provides that the appropriate discipline is actual suspension or disbarment, and we have previously imposed actual suspension for such misconduct. (*Hallinan* v. *State Bar, supra*, 33 Cal.2d 246, 249 [three-month actual suspension for signing client's name without his consent].)

In the Segovia matter, petitioner violated Business and Professions Code sections 6068, subdivision (a) and 6103 by failing to communicate with his client.

In the Louk matter, petitioner breached a promise to his client by recording the trust deed on the client's property before petitioner was entitled to do so.

In view of his repeated and serious misconduct in multiple matters, petitioner must be suspended for a significant period of time to protect the public. Because the five-year suspension (with a two-year actual suspension) recommended by the review department was based in part on incorrect findings, we conclude, however, that a less lengthy suspension is warranted. The period of suspension shall be three years with an actual suspension for nine months, rather than the two-year actual suspension recommended by the review department.

## DISPOSITION

Petitioner Edward Martin Aronin is suspended from the practice of law for three years from the date this decision is final. Execution of the suspension is stayed. Petitioner is placed on probation subject to the terms and conditions set forth in the review department's decision, except (1) for the requirement that he prove satisfactorily to the State Bar his rehabilitation, his present fitness to practice, and his present learning and ability in the general law, before returning to practice under standard 1.4(c)(ii), and (2) that the period of actual suspension shall be for nine months.

In light of petitioner's repeated difficulties in handling client matters, including trust accounts, we impose an additional condition of probation. Before resuming the practice of law after his period of actual suspension, petitioner shall provide his probation monitor referee with written certification that petitioner has attended in its entirety a course or seminar in law office practices or management conducted by the California Continuing Education of the Bar (CEB) or a similar course of study approved in advance by the probation monitor referee. (*Blair* v. *State Bar, supra*, 49 Cal.3d 762, 782-783.)

We further order that: (1) Petitioner shall comply with paragraphs (a) and (c) of rule 955 of the California Rules of Court within 30 and 45 days, respectively, of the effective date of this decision. (2) Petitioner shall pass

the Professional Responsibility Examination given by the National Conference of Bar Examiners within one year of the effective date of this decision.

This order is effective on finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)

Petitioner's application for a rehearing was denied February 14, 1991, and the opinion was modified to read as printed above.