[No. S014192. Mar. 14, 1991.]

DOUGLAS PAUL GRIM, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

22

COUNSEL

Douglas Paul Grim, in pro. per., Margolis & Margolis, and Arthur L. Margolis for Petitioner.

Diane C. Yu, Richard J. Zanassi, Sandra T. Larson and Gael T. Infande-Weiss for Respondent.

OPINION

**THE COURT.**—We review the recommendation of the Review Department of the State Bar Court (review department) that petitioner Douglas Paul Grim be disbarred from the practice of law for having wilfully misappropriated over $5,500 of client funds.

Petitioner contends that disbarment is excessive. He argues that the review department's conclusions of law are unsupported by the evidence, that it failed to properly weigh the evidence, and that it failed to appropriately weigh mitigating and aggravating circumstances. He maintains that the interests of the public and the profession can be adequately safeguarded by the imposition of a suspension with probationary monitoring.

We conclude that the review department's recommendation is supported by the record, that compelling mitigating circumstances do not clearly predominate, and that disbarment is warranted.

## I. FACTS

Petitioner was admitted to the practice of law in California in January 1966. In a prior disciplinary proceeding in 1980, he was privately reproved for depositing $960.30 of a client's funds in his general account instead of in his client trust account, and for failing to perform services for the client. Petitioner did not return the funds to the client until after the initiation of State Bar disciplinary proceedings.

A. *Evidence of Misconduct*

Before 1984, petitioner represented Dr. Cabrera and his wife in various legal matters. In 1984, following the death of Dr. Cabrera, his widow retained petitioner to represent the estate of her husband in an action for breach of contract. While the action was pending, Mrs. Cabrera moved to Tennessee.

In March 1986, a judgment for $7,021 was entered in favor of the estate. Petitioner received payment of the judgment in April, deposited the funds in his client trust account, and notified Mrs. Cabrera of the receipt of the funds. Of the $7,021 received, petitioner was entitled to $1,432.57 for fees and costs, but he used all of the funds for his own purposes.

Beginning in 1986, petitioner was contacted on various occasions by Mrs. Cabrera's Tennessee attorneys, who were attempting to obtain her funds from petitioner. Petitioner did not pay Mrs. Cabrera until April 1989, after the State Bar had initiated disciplinary proceedings and held an evidentiary hearing. Petitioner paid Mrs. Cabrera a total of $6,546 ($5,546 as principal and $1,000 as interest).

In addition to the evidence relating to Mrs. Cabrera, the State Bar introduced into evidence the bank records of petitioner's trust account for the period February 1986 to February 1988. The records showed that the account was overdrawn on several occasions. Petitioner testified that he did not reconcile the bank statements, that individuals whom he had hired to reconcile his bank statements were unable to do so, and that he relied on his banker to reconcile his eight to fifteen bank accounts.

## B. *Evidence in Mitigation*

Petitioner's mitigating evidence centers on his assertion that he was under extreme stress because of financial problems at the time of his misconduct. He also cites as mitigating circumstances his cooperation with the State Bar and the favorable character evidence presented at the hearing.

Petitioner's financial distress arose out of a troubled business venture. Petitioner became involved in a business enterprise, Agri-Feeds, Inc., to produce animal food from waste agricultural cellulose. He was and still is the president, the chairman of the board of directors, and a 98 percent shareholder of Agri-Feeds. In February 1981, petitioner borrowed $731,000, secured by his personal real estate holdings, to construct an Agri-Feeds factory near Stockton. In 1982, he borrowed another $50,000 to complete construction of the factory. That same year, however, the factory was ordered closed because of air pollution problems.

In 1983, after petitioner had raised an additional $150,000, Agri-Feeds resumed operations. In 1984, petitioner raised another $300,000. Agri-Feeds remained in business until 1985, when it was closed for lack of operating capital. In 1986, when the misconduct occurred, petitioner was attempting to refinance Agri-Feeds while also practicing law. His efforts to obtain $6 million in additional financing were unsuccessful. During this

same period, petitioner was representing clients in 10 "major pieces of litigation," was running a carpool for his 2 young children (who lived with his ex-wife), and was making child support and other payments to benefit his children.

Ten character witnesses, including two superior court judges,[1] testified to petitioner's good moral character. All of them had known petitioner for a significant period of time. They described petitioner as a hard-working, competent attorney, who had been under significant financial stress as a result of the problems with Agri-Feeds. A number of the witnesses described petitioner's misappropriation as aberrational. Seven of the witnesses testified that they were not aware of petitioner's prior discipline until shortly before the hearing. Four of these seven witnesses did not learn of petitioner's failure to make restitution until they were questioned at the hearing. All of these witnesses, however, maintained that in their opinion petitioner was of good moral character.

Petitioner also presented three letters from former clients attesting to his good character.

## C. *State Bar Proceedings and Recommendations*

The hearing panel, consisting of a single referee, cited petitioner's prior discipline as an aggravating factor. In mitigation, the referee listed these eight circumstances: (1) petitioner's candor with the State Bar; (2) petitioner's stipulation to having violated former Rules of Professional Conduct, rule 8-101(B)(4) (duty to promptly pay or deliver client funds), and Business and Professions Code sections 6068 (duties of attorneys) and 6103 (violation of oath); (3) petitioner's restitution to Mrs. Cabrera; (4) the aberrational nature of petitioner's conduct; (5) the absence of other complaints against petitioner; (6) the severe financial stress to which petitioner was subjected as a result of the near failure of Agri-Feeds; (7) the testimony of the ten character witnesses; and (8) the three client letters. The referee recommended that petitioner be suspended from the practice of law for three years, that the suspension be stayed, and that petitioner be placed on probation for five years subject to conditions that included actual suspension for six months.

The review department, by a vote of 12 to 2, adopted the referee's findings, with certain modifications. It deleted the referee's conclusions with

---

[1]As we have previously noted (*Aronin* v. *State Bar* (1990) 52 Cal.3d 276, 290, fn. 4 [276 Cal.Rptr. 160, 801 P.2d 403]), canon 2B of the California Code of Judicial Conduct states that "Judges should not testify voluntarily as character witnesses." (Cal. Code Jud. Conduct, canon 2B; *In re Rivas* (1989) 49 Cal.3d 794, 798, fn. 6 [263 Cal.Rptr. 654, 781 P.2d 946].)

respect to aggravation, and substituted a brief recitation of the facts relating to petitioner's prior discipline. The review department also determined that "[i]n misappropriating the funds of Ms. Cabrera, [petitioner] took advantage of a family friend who was residing in Tennessee and who accordingly was at a disadvantage with respect to protecting her interests." The review department deleted the referee's second, third, fourth, fifth, sixth, and eighth factors in mitigation, and stated that most of petitioner's character witnesses were surprised to learn at the hearing that the funds had not been repaid. It added a finding that petitioner had candidly admitted the misappropriation to his client, and a finding that petitioner was guilty of gross neglect in the management of his client trust funds.

In recommending disbarment, the review department relied on the Standards for Attorney Sanctions for Professional Misconduct (Transitional Rules Proc. of State Bar, div. V; all further references to standards are to these provisions). The review department concluded that compelling mitigating circumstances did not clearly predominate, and it disregarded petitioner's restitution as a mitigating factor because the restitution was not made until after the hearing in this case. It gave little weight to petitioner's character witnesses because of their "mistaken belief that [petitioner] had promptly returned Ms. Cabrera's funds." It rejected petitioner's defense of financial stress because the defense did not meet the criteria of standard 1.2(e)(iv) for extreme emotional difficulty, and because the defense was "very questionable as an acceptable factor in mitigation." It did, however, consider petitioner's candor as a mitigating consideration.

## II.   DISCUSSION

Petitioner wilfully misappropriated his client's funds. ■ Misappropriation is more than a grievous breach of professional ethics. It violates basic notions of honesty and endangers public confidence in the legal profession. (*Chang* v. *State Bar* (1989) 49 Cal.3d 114, 128 [260 Cal.Rptr. 280, 775 P.2d 1049]; *Kelly* v. *State Bar* (1988) 45 Cal.3d 649, 656 [247 Cal.Rptr. 608, 754 P.2d 1104].) In all but the most exceptional of cases, it requires the imposition of the harshest discipline. (*Chang* v. *State Bar, supra,* at p. 128; *Gordon* v. *State Bar* (1982) 31 Cal.3d 748, 757 [183 Cal.Rptr. 861, 647 P.2d 137].) The seriousness of the offense and the propriety of disbarment as the appropriate discipline have long been recognized by this court (*In re Ford* (1988) 44 Cal.3d 810, 816 [244 Cal.Rptr. 476, 749 P.2d 1331], and cases cited) and are reflected in the standards. Standard 2.2(a) provides that wilful misappropriation of entrusted funds shall result in disbarment unless the amounts are insignificant or the most compelling mitigating circumstances clearly predominate.

We recently observed that the term "wilful misappropriation," as used in attorney discipline cases, "covers a broad range of conduct varying significantly in the degree of culpability," and that "[d]isbarment would rarely, if ever, be an appropriate discipline for an attorney whose only misconduct was a single act of negligent misappropriation, unaccompanied by acts of deceit or other aggravating factors." (*Edwards* v. *State Bar* (1990) 52 Cal.3d 28, 38 [276 Cal.Rptr. 153, 801 P.2d 396].) The misappropriation in this case, however, was not the result of carelessness or mistake; petitioner acted deliberately and with full knowledge that the funds belonged to his client. Moreover, the evidence supports an inference that petitioner intended to permanently deprive his client of her funds: petitioner repaid the funds only after the passage of almost three years and then only under the pressure of these disciplinary proceedings. Standard 2.2(a) is properly applied to such grave misconduct.

■   The standards and the recommendation of the review department are entitled to great weight. (*In re Naney* (1990) 51 Cal.3d 186, 190 [270 Cal.Rptr. 848, 793 P.2d 54].) When, as here, the review department's recommendation is consistent with the standards, we generally will not reject the recommendation unless we entertain grave doubts about its propriety. (See, e.g., *Hawes* v. *State Bar* (1990) 51 Cal.3d 587, 595 [274 Cal.Rptr. 2, 797 P.2d 1180]; *In re Rivas, supra,* 49 Cal.3d 794, 800.)   ■   The attorney bears the burden of demonstrating that the recommendation is erroneous or unlawful. (Bus. & Prof. Code, § 6083, subd. (c).)[2]

Petitioner does not contend that the amount he misappropriated ($5,546) was insignificant. (See *Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1361, 1368 [240 Cal.Rptr. 848, 743 P.2d 908] [$1,355.75 held to be a significant amount].) Yet he asserts that the recommended discipline of disbarment is excessive. Thus, the issue before us is whether petitioner has shown that "the most compelling mitigating circumstances clearly predominate . . . ." (Std. 2.2(a).)

In challenging the review department's recommendation of disbarment, petitioner argues that it deleted from the referee's decision certain findings in mitigation that were supported by sufficient evidence, and that it made conclusions regarding aggravating circumstances that were not supported by the evidence. A discussion of petitioner's contentions follows.

---

[2] Petitioner's argument that in determining discipline we must resolve all reasonable doubts in his favor is incorrect. The rule that culpability in State Bar proceedings must be established by convincing proof to a reasonable certainty and that reasonable doubts must be resolved in favor of the attorney (*Price* v. *State Bar* (1982) 30 Cal.3d 537, 547 [179 Cal.Rptr. 914, 638 P.2d 1311]; *Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 226 [113 Cal.Rptr. 175, 520 P.2d 991]) is inapplicable to the issue of appropriate discipline. Culpability is not in issue in this case.

A. *Mitigating Circumstances*

Petitioner contends the review department failed to accord appropriate weight in mitigation to his severe financial stress, the absence of complaints or misconduct reported to the State Bar other than his prior discipline, the aberrational nature of his misconduct, his restitution to Mrs. Cabrera, his cooperation in the State Bar proceedings, and the testimony of his character witnesses.

■ In rejecting petitioner's financial stress as a mitigating factor, the review department cited standard 1.2(e)(iv)[3] and, independent of the reference to this standard, questioned the propriety of financial stress as a factor in mitigation. Petitioner cites certain decisions by this court for the proposition that financial stress may be considered in mitigation, and he argues that standard 1.2(e)(iv) is inapplicable here.

Financial problems can be a mitigating factor in appropriate State Bar disciplinary cases. (See, e.g., *Amante* v. *State Bar* (1990) 50 Cal.3d 247, 254 [266 Cal.Rptr. 648, 786 P.2d 375]; *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337].) In misappropriation cases, financial problems are given significant weight in mitigation only if they "are extreme and result from circumstances that are not reasonably foreseeable or that are beyond the attorney's control." (*In re Naney, supra,* 51 Cal.3d at p. 196.) Financial difficulties exist in virtually all misappropriation cases for the simple reason that it is usually the attorney's need or desire for money that is the motivation for stealing client funds. Unless our consideration of an attorney's financial pressures as a mitigating factor is confined to circumstances not reasonably foreseeable or beyond the attorney's control, the rule prohibiting misappropriation, and the substantial protection it affords the public, will be largely nullified. It is precisely when the attorney's need or desire for funds is greatest that the need for the public protection afforded by the rule prohibiting misappropriation is greatest. (See, e.g., *Amante* v. *State Bar, supra,* 50 Cal.3d at p. 255; *Smith* v. *State Bar* (1985) 38 Cal.3d 525, 540-541 [213 Cal.Rptr. 236, 698 P.2d 139].)

Petitioner's reliance on financial stress as a mitigating factor is misplaced. His financial difficulties were neither unforeseeable nor beyond his control. It was the near failure of Agri-Feeds, petitioner's business venture, that was primarily responsible for petitioner's stress. As mentioned earlier, the purpose of Agri-Feeds, of which petitioner owns 98 percent of the stock, is to convert waste agricultural cellulose into animal food. It is a novel enterprise

---

[3]Standard 1.2(e)(iv) says that severe emotional difficulties may be a mitigating circumstance if it is established by expert testimony and the attorney demonstrates by clear and convincing evidence that he no longer suffers from the difficulties.

using untested technology. The risk of financial failure was reasonably foreseeable by petitioner. Indeed, Agri-Feeds had closed twice, once in 1983 and once in 1985, *before* petitioner misappropriated Mrs. Cabrera's money. Petitioner controlled his business venture. Petitioner financed Agri-Feeds through loans secured by his real estate holdings and personal guaranties. Under these circumstances, petitioner's financial problems are not entitled to significant weight in mitigation.[4]

█ Petitioner argues that except for the 1980 prior discipline and the present disciplinary matter, he has committed no misconduct since his admission to the State Bar in 1966, and that this should be considered a mitigating circumstance. He also points out that a number of his character witnesses testified that his misappropriation in this case was aberrational behavior.

Petitioner's private reproval in 1980 was based on a stipulation as to facts and discipline. The stipulation cited as a mitigating circumstance the fact that petitioner had practiced law since 1966 without prior discipline. Thus, before these proceedings, the length of petitioner's practice and the absence of complaints from clients are circumstances that have already been relied on to justify the imposition of a lesser degree of discipline. The prior discipline was imposed for petitioner's commingling of client funds and his failure to perform services. Commingling, like misappropriation (the misconduct involved here), is a serious offense involving funds entrusted to an attorney. (Std. 2.2(a) & (b).) Although petitioner minimizes the significance of his prior discipline, it is an aggravating factor. (Stds. 1.2(b)(i), 1.7.) Because of the similarity between, and the seriousness of, petitioner's 1980 misconduct and the present misconduct, we reject petitioner's contention.

█ Petitioner also contends his restitution of Mrs. Cabrera's funds should be considered as mitigating. Petitioner, however, did not make the payment until after he had been contacted by Mrs. Cabrera's Tennessee attorneys and after the State Bar had commenced disciplinary proceedings. Restitution paid under the force or threat of disciplinary proceedings is not a proper mitigating circumstance. (*Hitchcock* v. *State Bar* (1989) 48 Cal.3d 690, 709 [257 Cal.Rptr. 696, 771 P.2d 394].)

█ Petitioner correctly argues that the review department erred in deleting the referee's finding that petitioner's admission of violation of the former Rules of Professional Conduct and the Business and Professions Code sections constituted a mitigating circumstance. It is true that coopera-

---

[4] Because petitioner has not shown that financial stress should be considered as a mitigating factor in this case, a discussion of the review department's conclusion that petitioner's evidence did not satisfy the requirements of standard 1.2(e)(iv) is unnecessary.

tion with the State Bar during its investigation and proceedings is a mitigating factor. (Std. 1.2(e)(v).)

As noted earlier, 10 character witnesses testified on behalf of petitioner at the hearing. Among them were two superior court judges and one lawyer. The remaining seven witnesses were business associates or business people who had known petitioner for some time. Several of the witnesses testified that petitioner had performed legal work for them. The referee cited the testimony of the character witnesses in mitigation. The review department, however, gave little weight to the testimony in light of the witnesses' "mistaken belief" that petitioner had promptly returned Mrs. Cabrera's funds.

■ Petitioner contends the review department failed to give sufficient weight to the testimony of his character witnesses. We agree that the review department appears to have discounted this testimony too much. But we do not agree that the testimony established mitigation of a most compelling nature.

The record shows that four of the ten character witnesses, including one of the two judges, were unaware that petitioner had failed to make restitution to Mrs. Cabrera by the time of the hearing. Thus, an appreciable number of petitioner's witnesses did not know the full extent of petitioner's misconduct. (Std. 1.2(e)(vi).) Petitioner's failure to make full disclosure to these witnesses before the hearing diminishes the weight to be accorded the testimony of these witnesses. The testimony is, nevertheless, entitled to considerable weight because even after learning of petitioner's failure to restore the misappropriated funds, the character witnesses maintained that petitioner possessed good moral character.

## B. *Aggravating Circumstances*

Petitioner challenges the review department's finding, in aggravation, that he took advantage of a family friend who was residing in another state and thus was at a disadvantage with respect to protecting her interests. Petitioner also challenges the review department's finding that he was guilty of gross neglect in the management of his trust funds and office accounts. Petitioner maintains that the review department's findings are not within the charges set forth in the notice to show cause and are not supported by the findings of the hearing panel.

### 1. *Notice to Show Cause*

■ An attorney cannot be disciplined for a violation not alleged in the notice to show cause. If the evidence shows an ethical violation not charged

in the notice, the State Bar must amend the notice to conform to proof. A slight variance in the evidence that relates to the noticed charge, however, does not require an amendment unless the attorney demonstrates that the defense was actually compromised. (*Van Sloten* v. *State Bar* (1989) 48 Cal.3d 921, 928-929 [258 Cal.Rptr. 235, 771 P.2d 1323].) ▉ Furthermore, although evidence of uncharged misconduct cannot be used as an independent ground of discipline, it may be considered when it is otherwise relevant to an issue in the proceeding. (*Arm* v. *State Bar* (1990) 50 Cal.3d 763, 775 [268 Cal.Rptr. 741, 789 P.2d 922].)

The review department's finding that petitioner took advantage of Mrs. Cabrera as a family friend residing in another state and its finding that he mismanaged his trust account were not used as independent grounds of discipline but as circumstances in aggravation. Factors in aggravation include indifference toward rectifying the consequences of the misconduct (std. 1.2(b)(v)) and lack of cooperation with the victim of the misconduct (std. 1.2(b)(vi)).

The evidence of petitioner's mismanagement of his trust account was also relevant to a factor in aggravation. Standard 1.2(b)(ii) provides that it shall be considered an aggravating factor "that the current misconduct found or acknowledged by the member evidences multiple acts of wrongdoing or demonstrates a pattern of misconduct." Petitioner was charged with misappropriating client funds from his trust account. He stipulated that he took Mrs. Cabrera's money for his own use. He also testified at the hearing that his trust account was overdrawn on several occasions. And he testified that neither he nor individuals whom he had hired were able to reconcile his bank statements. The review department properly considered this evidence.

2. *Hearing Panel Findings and Sufficiency of Evidence*

▉ Petitioner asserts that the review department's findings in aggravation are not supported by the findings of the hearing panel. The argument is without merit. The review department has the authority to "adopt findings, conclusions and a decision or recommendation at variance with the hearing department." (Transitional Rules Proc. of State Bar, rule 453(a).) Because the review department has such authority, we will deem petitioner's assertion to be a challenge to the sufficiency of the evidence to support the review department's findings in aggravation.

We agree with petitioner that the record does not support the review department's finding that Mrs. Cabrera was a family friend of petitioner. The record merely shows that before the misconduct in this case petitioner represented Dr. and Mrs. Cabrera in some legal matters, that Mrs. Cabrera

would inquire about petitioner's children, and that she invited petitioner to see her in Tennessee if he happened to be in that state for a visit. These instances do not support the review department's finding that Mrs. Cabrera was a family friend.

The record does, however, support the review department's finding that petitioner took advantage of Mrs. Cabrera's move to Tennessee after her husband's death. The record discloses that attorneys from Tennessee representing Mrs. Cabrera contacted petitioner on various occasions in an effort to obtain her funds from petitioner. Although petitioner told the attorneys he would pay Mrs. Cabrera, he did not do so until after the State Bar hearing in this case. We conclude that the review department properly considered these circumstances as aggravating factors. (Std. 1.2(b)(iii).)

Contrary to petitioner's assertion, the review department properly found that petitioner had exhibited gross neglect in the management of his trust funds and office accounts. The record shows that petitioner's trust account was overdrawn on several occasions, and that his bank statements could not be reconciled.

C. *Propriety of Discipline*

■ Petitioner contends that the recommended discipline of disbarment is excessive, unduly harsh, and unnecessary. He argues that disbarment exceeds the level of discipline that this court has imposed in comparable cases, and that monitored probation will adequately protect the public interest.

The extent of discipline is determined by a balanced consideration of the relevant factors. (*McCray* v. *State Bar* (1985) 38 Cal.3d 257, 273 [211 Cal.Rptr. 691, 696 P.2d 83].) The imposition of discipline less than disbarment in other cases involving different facts (see, e.g., *Lawhorn* v. *State Bar*, *supra*, 43 Cal.3d 1357, 1368 [compelling mitigating factors in a case "falling between wilful misappropriation and simple commingling"]; *Chasteen* v. *State Bar* (1985) 40 Cal.3d 586, 592-593 [220 Cal.Rptr. 842, 709 P.2d 861] [recommended discipline increased]) does not lead to the conclusion that disbarment in this case is unwarranted. (See, e.g., *Chang* v. *State Bar*, *supra*, 49 Cal.3d at pp. 128-129 [disbarment based on single misappropriation]; *In re Demergian* (1989) 48 Cal.3d 284, 289, 298 [256 Cal.Rptr. 392, 768 P.2d 1069] [disbarment based on theft of client funds]; *In re Abbott* (1977) 19 Cal.3d 249, 251, 254 [137 Cal.Rptr. 195, 561 P.2d 285] [same].)

Petitioner has not shown that the review department's recommendation of disbarment is erroneous or unlawful. Petitioner's cooperation with the

State Bar and evidence of his good character do not constitute compelling mitigation in view of the various circumstances in aggravation. Petitioner misappropriated Mrs. Cabrera's $5,546. He has a prior disciplinary record. He did not make restitution, despite the efforts of Mrs. Cabrera's Tennessee attorneys to obtain her funds, until after the State Bar's evidentiary hearing. He took advantage of the fact that Mrs. Cabrera resided in another state and placed his interests over those of his client.

Because disbarment is warranted, it is not necessary to address the possibility of prophylactic measures, such as the imposition of a probation monitor, that may be appropriate when lesser forms of discipline are warranted.

### DISPOSITION

It is ordered that Douglas Paul Grim be disbarred from the practice of law in California, that his name be stricken from the roll of attorneys, that he comply with rule 955 of the California Rules of Court, and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. Failure to comply with rule 955 may result in imprisonment. (Bus. & Prof. Code, § 6126, subd. (c).) This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)

**MOSK, J.**—I dissent.

I would adopt the recommendation of the referee who heard the evidence and had an opportunity to evaluate the witnesses. The referee recommended five years' probation that included six months' actual suspension and other conditions.

The petitioner was guilty of one act of misappropriation. Unquestionably it was serious and caused inconvenience to the client affected thereby. However this was one isolated incident and in no way indicates a course of conduct. Since a private reproval 11 years ago the petitioner has been free of improper or unprofessional practice.

Under these circumstances disbarment impresses me as excessive punishment unnecessary for the protection of the public.